### UNITED STATES v. WILLIAMS et al.
#### Nos. 10382, 10432.

United States Court of Appeals
Seventh Circuit.

Jan. 18, 1952.

Eugene T. Devitt, Amos J. Coffman, George M. Crane, and Myer H. Gladstone, all of Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Charles V. Kralovec, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

These are appeals from a judgment of the District Court which found both of the defendants, John Williams and Nick Rogulich, guilty of receiving and possessing property stolen from interstate shipments in violation of 18 U.S.C.A. § 659. Each of the defendants was sentenced to serve two years in the penitentiary on each of the two counts of the indictment, the sentences to run concurrently.

The first count of the indictment charged these defendants with possessing property which they knew was stolen and the second charged them, together with Charles S. Kraw and Michael J. Diorio, with receiving the stolen property. Kraw was granted a severance and tried later. The Government dismissed the charge against Diorio. The property involved was described in the indictment as being: "1 Carrier Automatic Ice Cube Maker, Serial No. 01009 and Storage Bin," which were stolen from the platform or dock of the Dakota Transfer and Storage Company in Chicago, Illinois.

There was sufficient evidence to support the finding of the following facts: On Friday, January 13, 1950, goods, including the ice cube maker and storage bin, shipped by the Carrier Corporation from New York, New York, to Rapid City, South Dakota, were unloaded for transfer on the Dakota Transfer and Storage Company's freight dock at 25th and Southwest Streets in Chicago, Illinois. The Dakota Transfer Company and the Indiana Motor Express Company occupied and used the same warehouse building and dock. The dock was separated only by a partition for the use of the two companies. On the night of Saturday, January 14, 1950, at about 11:00 p. m., two unknown, masked men seized and blindfolded the night watchman who was on duty guarding the building and docks of these two transfer companies. After the watchman was so bound and blindfolded he was left in a washroom of the building. He could not see what the men did nor identify them. He remained so bound and blindfolded for about two hours. The next morning, January 15th, the Indiana Motor Express Company discovered that some radio and television sets and television tubes had been taken from its dock and that someone had also stolen its pick-up truck,

which was abandoned in a private driveway at 8035 South Central Avenue in Oak Lawn, Illinois, about 2:00 or 2:30 a. m. the same night. On Monday morning, January 16th, an inventory taken by the Dakota Transfer Company of the goods on its docks revealed the fact that the ice cube maker and storage bin had also been stolen.

On Friday, January 13, 1950, the defendant Williams went to the home of James Cashman at 7725 South Newcastle in Oak Lawn, Illinois, and rented the garage attached to Cashman's house, saying that he had some "stuff" he wanted to store there for a while. Cashman's house was located two miles distant from 8035 South Central Avenue where the Indiana Motor Express Company's pick-up truck was abandoned. The next night, Saturday, the 14th "around midnight," the same night the goods were stolen, Williams, accompanied by Rogulich and two or three other men, returned to Cashman's home and unloaded about fifty boxes and cartons into the Cashman garage from a truck. Cashman helped them with the unloading and remembered seeing something in one box that looked like glass or a bowl, but he was unable to identify it positively—he said it could have been a lamp or a television tube or anything. During the ensuing weeks Williams and Rogulich visited the garage several times, each time removing some of the boxes. No other boxes or cartons were brought to the garage. Most, if not all, of their visits to the garage were made after dark. The last time the defendants came was on February 7, 1950, when it was just turning dark. At that time the defendants were accompanied by Diorio and Kraw who took away the last of the boxes in a trailer attached to their automobile.

Cashman had known Williams and Rogulich for two or three years before Williams rented the garage. He knew that Williams was in the slot machine business and said that the boxes and cartons stored in the garage were of such a size that they might have contained slot machines.

The principal witness for the Government was Michael J. Diorio, a confessed accomplice of the defendants. He was to have been tried separately from these two defendants and from Charles S. Kraw but, after the conviction of Kraw, Williams and Rogulich, the Government dismissed the case against Diorio.

During January and February 1950, Diorio, with his partner, Charles S. Kraw, owned and operated the Miami Lounge, a tavern located at 2822 West 55th Street in Chicago. During this time they arranged with Williams to buy the ice cube maker and storage bin, paying $400 for it. The retail price of this new machine was more than twice that amount. After the arrangements for the purchase had been made, Kraw, on February 7th, rented a trailer and, with Diorio and the two defendants, went to Cashman's house and picked up the last of the boxes from the rented garage. The stolen ice cube maker and storage bin were in these boxes. The ice cube maker and storage bin were taken from Cashman's garage to the Miami Lounge. Later, on February 22nd, the ice cube machine was hooked up for operation in the kitchen of the Miami Lounge. Diorio paid part of the purchase price to Williams in two checks on the funds of the Miami Lounge. One check was made out to "Cash" and the other was made out by Diorio to himself and then endorsed. This was done at the suggestion of Williams. The endorsement of Williams did not appear on either of these checks.

Evidence in this case and in the later Kraw case disclosed how the stolen ice cube maker was discovered. U. S. v. Kraw, 7 Cir., 194 F.2d 78. In May 1950, Kraw called in a repair man to work on the beer cooler in the kitchen of the Miami Lounge. This man noticed that the ice cube maker situated next to the cooler was not working properly and he suggested that he could get a man from the Carrier Corporation to repair it. Kraw asked him to do so. The Carrier repairman reported the number of the machine to the Carrier Corporation which, in turn, reported it to the Dakota Transfer Company from whose dock it had been taken. The President of the Dakota Transfer Company visited

Kraw in June and told him that the machine had been stolen and that the Dakota Company had paid the Carrier Corporation $519.13 for the loss. Kraw was permitted to keep the machine on his payment of this amount to the Dakota Transfer Company. By this time Diorio had sold his interest in the Miami Lounge to Kraw's former wife.

Diorio's testimony was conflicting on some points. He said that there was no gambling in the Miami Lounge, but later he admitted that there had been gambling there and that he had bought at least one slot machine from Williams. Williams testified in his own defense. He said that he was in the business of selling slot machines and that the boxes and cartons stored in the garage contained these machines.

The defendants in their brief admit that there was sufficient evidence to sustain a finding that the ice cube maker was stolen from an interstate shipment but they insist that there was not sufficient evidence to show that they, with knowledge that it was stolen, were either in possession of or received the stolen property. The defendants also insist that the trial court erred in admitting evidence of the theft of other property from the Indiana Motor Express Company. And they contend that the testimony of Diorio, an admitted accomplice, "should have been subjected to close scrutiny, minute examination, and weighed with great caution."

First, as to the conviction of the defendants upon the uncorroborated testimony of Diorio the accomplice. The defendants "do not question the general rule of law that a defendant may be convicted upon the uncorroborated testimony of an admitted accomplice," but they insist that Diorio's testimony here should have been scrutinized closely and weighed with great caution, and that this testimony was doubly suspect because of the subsequent dismissal of the charges against Diorio.

The scrutiny of evidence, the weighing of testimony and the determination as to the credibility of witnesses are,

of course, peculiarly the function of the trier of the facts, here the trial judge. In this case the fact that Diorio was an accomplice was brought out in the trial court. The trial judge saw him and listened to him testify. We find nothing to indicate that the trial judge did not carefully scrutinize and weigh his testimony. The trial judge was necessarily aware of certain inconsistencies in Diorio's testimony and yet he chose to believe the essential parts of Diorio's testimony rather than to believe the defendant Williams and some of the other witnesses. In view of the entire record in this case we cannot say that the trial judge abused his discretion by accepting and believing Diorio's testimony.

Diorio's testimony, together with the other evidence in this case, furnished the trial judge a reasonable basis for inferring that the defendants, Williams and Rogulich, received and had possession of these goods with knowledge that they had been stolen. The defendants admit that there was sufficient evidence to sustain a finding that the goods were stolen. It is also admitted that after the theft the ice cube maker was located in the Miami Lounge operated by the partners, Diorio and Kraw. Diorio's testimony that the stolen property was brought to the Miami Lounge from Cashman's garage on the night of February 7, 1950, is supported by the testimony of Cashman who said that the only delivery of boxes to his garage was by Williams and Rogulich on the night of January 14, 1950, the night the goods were stolen, and that the last boxes were taken from his garage by Williams and Rogulich on the night of February 7th, the night of their delivery to the Miami Lounge when Williams and Rogulich helped load the boxes into a trailer attached to the automobile of the two men who were with them. Cashman also testified, as did Diorio, that at that time Cashman was painting his automobile. If the ice cube maker was taken out of the Cashman garage on the night of February 7th, it was necessarily placed in the garage on January 14th, the night the goods were stolen, since no goods were delivered to the ga-

rage during the time intervening between those two dates.

■ The garage was rented by Williams. He and Rogulich on several occasions came to the garage and removed some of the boxes. Even though Williams was the one who rented the garage and received payment for the ice cube maker, Rogulich's repeated trips to the garage and his assistance in bringing the boxes to the garage, in taking them away, including the boxes containing the ice cube maker, and his presence at the tavern with Williams when the sale was made to Kraw— all this would seem to furnish reasonable grounds for finding that the entire matter was a joint enterprise and that the defendants were both in possession of the ice cube machine from the time it was stolen until it was delivered to Kraw.

Rogulich cites three decisions of this Court as supporting the proposition that even if there was possession by Williams, there was none by Rogulich. The cases cited were United States v. O'Brien, 7 Cir., 174 F.2d 341; United States v. Wainer, 7 Cir., 170 F.2d 603; and Caringella v. United States, 7 Cir., 78 F.2d 563. In none of those cases was there evidence connecting the particular defendants released directly with the stolen property.

In the O'Brien case, O'Brien was twice seen on the night of the theft with the owner of the truck used to steal the goods. He was first seen sitting in the truck with the owner. There was no evidence that the stolen goods were in the truck at that time. O'Brien was drunk and wandered in and out of a certain bar during that night. Later he was again seen walking with the owner of the truck. At that time he was intoxicated. Sometime between these two times the truck was used in a theft by its owner. In the Wainer case [170 F.2d page 605] the defendant had asserted to officers entering the liquor store which was accused of receiving stolen cases of beer, "I am the boss." In fact that was not true, and he was never shown to have had anything to do with the property. In the Caringella case the defendant owned the place of stor-

age of the goods but was not shown to have known of its use for this or to have been involved in any way with it. These cases present an entirely different factual picture from that in the instant case.

In the Caringella case, supra, this Court pointed out that such issues should ordinarily be left to the jury and said, 78 F.2d at page 566: "* * * Unexplained possession of stolen goods shortly after a theft may evidence guilt. In fact, the surrounding circumstances, coupled with this fact of possession, may make a persuasive case of guilt. * * *"

We think this statement applicable to the present case.

The defendants also insist that there was no evidence furnishing a basis for a reasonable inference that they had knowledge that the ice cube maker had been stolen. We cannot agree with this contention. Williams rented Cashman's garage the day before the theft to store some "stuff" for a while. Both defendants brought the "stuff," including the ice cube maker, to the garage in the middle of the night *almost immediately after it was stolen.* The ensuing trips to the garage were also made *after dark.* Williams denied ever seeing or having the stolen ice cube maker in his possession. Williams denied that Rogulich went with him to the Cashman garage on February 7th. Williams said at the trial that he had known Rogulich for about a year, but he had told the investigating F.B.I. agent that he was *not acquainted with Rogulich and that he was not acquainted with anyone by the name of Diorio.* When Williams sold the ice cube machine to Kraw he furnished *no bill of sale nor any receipt.* He accepted as the purchase price less than one-half of the regular retail price and requested that the two checks given in payment be made out, one to "Cash" and the other to Diorio and that the second check then be endorsed by Diorio. Williams' name thus appeared on neither check.

Rogulich, on the other hand, admitted to F.B.I. Agent Yadon that he knew there was an ice cube maker out at the Cashman garage. He said he had gone out there

with Williams to see about buying it but that, upon examining it, he found it to be too large for his purposes and so did not buy it.

All of these inconsistencies and misstatements considered with the facts which were proved or admitted do not present the picture of men engaged in a legitimate transaction. It is too much to believe that this picture was brought about by coincidence or by innocent errors. The trial judge was clearly justified in finding that both defendants had known that the property was stolen.

The defendants also strenuously object to the action of the trial court in admitting evidence, over the objection of defendants' counsel, of the theft from the Indiana Motor Express Company of crates and cartons containing radio and television sets and television tubes and of the theft of a pick-up truck. The trial judge said that he was admitting this evidence on the theory that in connection with all of the other evidence and circumstances, "it tends to establish the fact that there was a theft of some merchandise, and should be considered in connection with all of the other evidence and circumstances in evidence as to whether or not the property in question was stolen property."

The other merchandise was stolen from the same freight dock on which the ice cube maker had been located at the time of the theft. It was stolen during the night of Saturday, January 14, 1950, the same night the crates containing the ice cube machine were unloaded from a pick-up truck into Cashman's garage. The Indiana Motor Express Company's pick-up truck was stolen the same night and was abandoned in the driveway of private property about 2:00 a. m. of the same night, at a point only two miles distant from the Cashman garage.

Here we do not have "another distinct and separate" crime such as the court was discussing in Niederluecke v. United States, 8 Cir., 21 F.2d 511; nor a "wholly independent" crime as in Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed.

1077. In Lovely v. United States, 4 Cir., 169 F.2d 386, cited by the defendants on this point, the defendant was charged with rape. He admitted sexual intercourse with the woman and the only question was as to the woman's consent. Evidence of another rape by the defendant was held inadmissible. The court there correctly pointed out, 169 F.2d at page 390, that: "The fact that one woman was raped, however, has no tendency to prove that another woman did not consent."

In the instant case, the other crime was closely connected with, if not a part of, this crime. The pick-up truck of the Indiana Motor Express Company, stolen at the same time, was apparently used to haul the ice cube machine and the other stolen goods to the Cashman garage. The other goods stolen consisted of a large number of crates and cartons. There were a large number of crates and cartons taken by the defendants to the Cashman garage on the same truck with the ice cube maker. Showing the theft of the other crates, cartons and the pick-up truck would tend to show that the ice cube maker had also been stolen and when it had been stolen. The admission of this evidence was proper for that purpose. See 20 Am.Jur., Pages 293 to 296, and 9 Cyclopedia of Federal Procedure (2nd Edition) § 4315.

The trial judge trying this case was an experienced and competent judge. As we pointed out above, he stated that he would consider this evidence as to whether the property (the ice cube maker) was stolen property. His statement makes perfectly clear the reason why he admitted the evidence and the question on which he considered it. On this question the defendants admit in their brief in this Court that "the evidence established that the Carrier ice cube maker was stolen from an interstate shipment on January 14, 15 or 16, 1950." Therefore, the consideration of this evidence on that issue did not harm the defendants.

The judgment of the District Court is affirmed.