**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert John McNEIL, Defendant-**
**Appellant.**

**No. 242, Docket 24845.**

United States Court of Appeals
Second Circuit.

Argued April 11, 1958.

Decided May 14, 1958.

Jacobs, Jacobs, Jacobs & Jacobs, New Haven, Conn., Israel J. Jacobs, Richard L. Jacobs, New Haven, Conn., for appellant. Argued by Stanley A. Jacobs, New Haven, Conn.

Simon S. Cohen, U. S. Atty., Hartford, Conn., W. Paul Flynn, Asst. U. S. Atty., New Haven, Conn., for appellee.

Before SWAN, HINCKS and MOORE, Circuit Judges.

PER CURIAM.

Appellant was convicted upon verdict of a jury for violation of 18 U.S.C.A. § 659 (possession of goods stolen from an interstate shipment, knowing the same to have been stolen) and was sentenced to six months imprisonment. He offered no evidence at the trial but moved for acquittal when the Government rested. His appeal assigns error to the denial of this motion and to portions of the court's charge to the jury.

With respect to denial of acquittal, the contention is that defendant's possession of the goods with guilty knowledge was not proven. Looking at the evidence in the light most favorable to the prosecution, as we must on a motion for acquittal, we think that the issue was properly left to the jury's determination. The evidence established that a shipment of 607 cases of rubber floor title left Waltham, Massachusetts, on Friday, January 25, 1957 for transportation by trailer truck to New York City. On Saturday and Sunday the truck laid over at the carrier's terminal in Wallingford, Connecticut. On Monday the truck proceeded to its destination in New York, where it was found that 102 cases of the shipment were missing. Even before the carrier knew that these cases were missing, they had been discovered by the police of North Haven, Connecticut, which is only a few miles distant from Wallingford, at four o'clock in the morning of Monday, January 27, on premises of, or adjacent to, the house were appellant lived.[1] The police had been summoned by a neighbor who was alarmed by hearing the noise caused by unloading the tile from a motor vehicle on the premises of appellant's residence. When the police arrived they found a partially unloaded suburban type truck in which were 21 cases of the stolen tile. The other 81 cases were in a chicken coop on the lot adjacent to appellant's residence. The motor of the suburban truck was still warm and the keys were in the ignition. No person was seen in the truck or coop, and the police made no inquiry at the time at appellant's house. The truck was registered in appellant's name; and not long before January 27 he had asked permission to use the coop to store furniture, and had obtained scrap lumber for the purpose of boarding up the coop windows. There was also testimony that a padlock had recently been put on the coop door, but no direct evidence proved who put it on or who had a key to unlock it. Subsequent to finding the stolen tile, several police officers and an FBI agent talked with appellant. They testified that he said he knew nothing about the tile, that he had rented the coop to one Chick Jameson, "address unknown, who he met casually," for $25.00 a month, and had also rented the suburban truck to him for $10.00; that he also said he was playing poker on the morning the tile was found by the police, with Mickey Zello (called "Mickey Mouse") and two unknown men at the Blue Bell Club on Grand Avenue. The police made some attempt, without success, to find Jameson and Zello. There is no indication that they went to the Blue Bell Club to check appellant's alibi.

Appellant's brief, page 7, concedes that it might be inferred from the facts proven "that whoever had used the truck at the time in question had been guilty

---

1. Both counsel and witnesses referred to the time the goods were discovered by the police as being 4:00 a. m., Monday, January 27. In fact Monday was January 28. The mistake in date is not significant.

of the crime of possessing stolen goods," but it is argued that the evidence fails to point to McNeil as that person. We think the evidence sufficient. The truck was his and there was credible evidence that he had been given exclusive possession of the coop. Of course the jury was at liberty to disbelieve appellant's statements to the police that the coop and truck had been rented to Chick Jameson, "address unknown, who he met casually." If his statements were disbelieved, the jury could reasonably conclude that appellant had exclusive possession of the tile found in the car and the coop. From the fact that the tile was put into the coop at 4:00 a. m. guilty knowledge on the part of the possessor might readily be inferred. The court charged correctly as to the essential elements of the crime; and the jury's verdict in our opinion is supportable, despite counsel's able argument to the contrary.

With respect to alleged errors in the charge little need be said. Exception was taken to the word "then" in the court's reference to "the evidence that there was then a padlock on the coop," the defendant arguing that there was no evidence as to the padlock being there at the time the goods were found in the coop. But the court repeatedly instructed the jury that their recollection of the evidence was to control. We see no merit in this exception.

The other portions of the charge claimed to be erroneous are the following:

"They [the Government] apparently ask you to consider statements made by the defendant as to the use of the car by one Jameson, and the efforts made by the police and government agents to locate a person by that name, and the failure to do so, in order to ask that you infer that that [sic] was no such person in existence, and that that explanation of the possession by another of the car is without foundation. The Government asks you to draw those inferences.

"As I have said, it is for you to determine whether you may reasonably draw such inferences from the facts which you do find to have been established in that case as to what search actually was made, and whether there was any such person thoroughly searched for, and not found, and whether the statement was made by the defendant."

It may be, as the appellee argues, that the exception taken was not specific enough to call the court's attention to the precise nature of the alleged error.[2] But however that may be, we think the charge was correct. It left to the jury the inferences to be drawn from the evidence.

Judgment affirmed.

2. The exception reads: "It is also our claim that the fact that the police testified that he named certain persons whom they were not able to fined, cannot be considered against the defendant at this time." Compare Rule 30, F.R.Cr.P., 18 U.S.C.A.; Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 87 L.Ed. 645; Nabob Oil Co. v. United States, 10 Cir., 190 F.2d 478, 479.