**Donald KRAMER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 17293.**

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 14, 1962.

Decided Jan. 24, 1963.

---

Bastian, Circuit Judge, dissented.

Mr. William R. Perlik, Washington, D. C., (appointed by this court), for appellant.

Mr. Tim Murphy, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Arthur J. McLaughlin, Asst. U. S. Attys., were on the brief, for appellee.

---

Before FAHY and BASTIAN, Circuit Judges, and BELL, Circuit Judge for the Fourth Circuit.[*]

FAHY, Circuit Judge.

Appellant and his co-defendant Dewdney were jointly indicted and tried for housebreaking, Section 22–1801, D.C. Code. Dewdney was convicted and did not appeal. Appellant, also convicted on circumstantial and hearsay evidence, brings this appeal. From the circumstantial evidence the jury, although by no means obliged to do so, could have found that appellant acted as a lookout for Dewdney, who entered the premises, and was accordingly an accessory liable as a principal under Section 22–105.[1] The circumstantial evidence included testimony that appellant was seen walking back and forth in an alley in the rear of the house, although at the time of the actual break-in he had gone some distance away from the premises. Whether or not the jury would have convicted appellant on the circumstantial evidence we cannot say; for in addition they were permitted to hear damaging hearsay evidence in the circumstances now to be related.

▮ With the jury excluded, following proper trial practice,[2] the court heard testimony regarding a confession made by Dewdney to Officer Chambers of the Metropolitan Police Department. The officer testified that Dewdney approached him, wanting to talk with him about the case at the time the officer was going to appear before the Grand Jury. The officer testified about the conversation as follows:

"I said, 'what happened,' and I said, 'Did you do this, did you go in his home that night?' And he said 'yes.'

---

[*] Sitting by designation pursuant to Sec. 291 (a), Title 28, U.S.Code.

1. D.C.Code § 22–105 reads as follows: "In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as ac-

cessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be."

2. See Crosby v. United States, 114 U.S. App.D.C. 233, 314 F.2d 238 (1962).

"I said: 'Was Kramer with you?'

He said, 'Yes.' "

Counsel for appellant Kramer stated to the court before the jury was recalled: "If he [the officer] is going to testify, I don't think it is admissible against Kramer, that whole matter of the alleged crime." The court said it would only be admissible against Dewdney.

When the trial resumed before the jury Officer Chambers was examined by the Assistant United States Attorney as follows:

"Q. All right; * * * tell us under what circumstances you saw the defendant John Dewdney on June 26th?

"A. I was out in the hallway down below the Grand Jury room and John [Dewdney] came up to me and wanted to talk to me.

*    *    *    *    *    *    *

"Q. What did he say in reference, if anything, to what happened on May 26, 1961? A. I asked him: 'What did you want, John?'

"And Mr. Dewdney, he said, 'I want to talk to you about this case.'

"And I said: 'Why don't you talk to me, and he said that he was sorry about it, because he knows Mr. Watson [whose house was entered] for so long.'

"So I said: 'Well, did you do it?' and he said, 'Yes.'

"I said: 'Was Kramer with you on it?' And he said, 'Yes.' "

At the conclusion of the Officer's direct testimony the court advised the jury:

"Anything that was said by the defendant about the defendant Kramer, outside the presence of Kramer, is not admissible as evidence against Kramer, because he was not in a position to either deny the statement which allegedly was made against him, or affirm it, so you will have to disregard anything that was said by the defendant re-garding Kramer as against the defendant Kramer."

What Officer Chambers testified Dewdney said to him about appellant Kramer being with him in the house-breaking was pure hearsay as to Kramer and could be received against him only in violation of an elementary rule of evidence. Since it was not admissible against Kramer and was no essential part whatever of Dewdney's own confession of guilt it was not admissible at all. Yet we are urged to disregard this inadmissible and damaging hearsay evidence because, it is said, Kramer's counsel did not make adequate objection. As we have seen he did object that Dewdney's confession could not be considered against appellant. And the court in advising the jury to that effect did so in language, quoted above, which shows the court understood that counsel was objecting to what Dewdney said about appellant. Be that as it may, neither the Assistant United States Attorney nor the court took steps to prevent the officer from repeating on the witness stand the hearsay statement by Dewdney indicating appellant's guilt, which had been clearly disclosed when the jury was not present and when the admissibility of Dewdney's own confession was being inquired into. When the trial was resumed before the jury the question and answer about Kramer's participation should have been omitted. The Assistant United States Attorney who elicited the testimony is an experienced prosecutor. Though the possibility of an oversight on his part may not be excluded it is hardly likely that he was ignorant of the hearsay character of the officer's statement of what Dewdney said to the officer about Kramer. He could readily have refrained from eliciting this hearsay evidence of which he had been made aware when the jury was not present. He was not taken by surprise, and, as we have said, Dewdney's reference to Kramer was no part of and in no manner inseparably intertwined with Dewdney's own admission of guilt. Compare Delli Paoli v. United States, 352 U.S. 232, 237, 77 S.Ct. 294, 1 L.Ed.2d

278, where the impracticality of deletion of a confessor's reference to his co-defendant was accepted by the court.

The trial judge in our case as well as the prosecuting attorney could have taken steps to protect the trial from this inadmissible hearsay evidence.

The suggestion that in the above circumstances the admission of the evidence must be overlooked because of trial tactics of defense counsel, for which the accused must bear the consequence, with its implication that the experienced prosecutor and the trial court were misled, is unacceptable to us. We are unwilling to decide the case on the supposition that defense counsel somehow for Kramer's ends misled the prosecution and the court in a matter which fell within their own responsibility as well as his. To do so would be unjust not only to defense counsel and the appellant but also to the experienced prosecutor and the able trial judge.

Our decision implies no criticism of the trial judge. The course to be taken at a trial is not always clear. On appeal, where there is opportunity for deliberation and reflection, the correct course is sometimes more readily apparent than when a prompt ruling is required during a trial. Appellate review in this case clearly leads to the conclusion that the officer's recitation before the jury of what Dewdney said to him about Kramer's participation should not have been allowed. It was pure hearsay and seriously prejudicial.

We do not pass upon the claim of error in the judge's omission in his final instructions to the jury to warn against giving regard to anything Dewdney said in his confession about Kramer. We note that Kramer's counsel expressed his satisfaction with the instructions. Our decision turns on the admission itself of the hearsay evidence at the instance of the prosecution in circumstances which would readily have permitted the court to avoid injection of this evidence into the trial. In this situation and with the other evidence leaving the issue of guilt in doubt, we need not speculate whether the warning given to the jury to disregard the evidence was sufficient to overcome the harmful effect of the officer's hearsay recitation on the stand of Dewdney's accusation of Kramer. We do not read either Delli Paoli v. United States, supra, or Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29 (1954), as requiring a different result.

■ The better rule is that when deletion of the hearsay reference to a co-defendant is feasible, as it was in our case, an instruction by the court that the jury disregard the reference is not an adequate substitute for deletion. It is preferable to avoid altogether the risk that the jury will be unable to put out of mind damaging evidence it has heard from the witness stand.[3] United States v. Jacangelo, 281 F.2d 574 (3d Cir., 1960); United States v. Gordon, 253 F. 2d 177 (7th Cir., 1958); United States v. Sansone, 206 F.2d 86 (2d Cir., 1953); Mora v. United States, 190 F.2d 749 (5th Cir., 1951).

Reversed.

BASTIAN, Circuit Judge (dissenting).

I think the judgment of conviction should be affirmed. At the outset, I emphatically disagree that, as the majority states, appellant was convicted even in part on "hearsay evidence." In any event, the so-called hearsay evidence was never admitted against appellant.

Kramer and one Dewdney were jointly indicted, tried and convicted of the crime of housebreaking. The testimony indi-

---

**3.** In Krulewitch v. United States, 336 U.S. 440–453, 69 S.Ct. 716, 93 L.Ed. 790, Mr. Justice Jackson's concurring opinion put the matter as follows:

"The naive assumption that prejudicial effects can be overcome by instructions to the jury, cf. Blumenthal v. United States, 332 U.S. 539, 559, 68 S. Ct. 248, 92 L.Ed. 154, all practicing lawyers know to be unmitigated fiction."

cated that Dewdney actually broke and entered the dwelling of one Watson, and that Kramer was the "lookout." Kramer's car was used by them to get to the Watson house and was parked a short distance from the front of the dwelling. The testimony also indicated that Kramer was in the alley at the rear, watching the house. Dewdney attempted to pry open the front door of the house without success. He then went to the rear (where Kramer was walking up and down), broke a glass in the rear door, and entered. He fled when he discovered there was an armed person in the house waiting for him, but was later apprehended. Kramer was seen shortly after Dewdney had fled, and was captured some distance away. He had made no attempt to enter his car; in fact, he was walking away from it.

The appeal relates essentially to statements made by Dewdney out of the presence of Kramer. Chambers (the police officer who had made the arrest) testified at the trial that, as he was waiting to testify before the grand jury, he was approached and spoken to by Dewdney. At this time, counsel for Dewdney objected. The court excused the jury, and the following occurred:

"[Government's attorney]: Tell us what happened.

"[Chambers]: I asked [Dewdney], what do you want to see me about, and he said, about Nips, and he was worried.

"[Government's attorney]: Who is Nips?

"[Chambers]: Mr. Watson, I am sorry. I said, what happened, and I said, Did you do this, did you go in his home that night? And he said yes. I said: Was Kramer with you? He said, Yes. I said, Why? He said, They heard that there was $3500 or $3800 in that house, that Mr. Watson had supposedly won on a number, and he said he was sorry for going in there, and that was his reason for seeing me, because I was

going to the Grand Jury, and I related this to the Grand Jury."

At the conclusion of the hearing out of the presence of the jury, the following occurred:

"[Defendant's counsel]: If he is going to testify, I don't think it is admissible against Kramer, that whole matter of the alleged crime.

"The Court: Well, anything that the defendant said, if the defendant made the statement which the officer claims he made, and I am talking about the defendant Dewdney, and this was made, I take it, out of the presence of Kramer?

"[Chambers]: That is correct, Your Honor.

"The Court: That statement would only be admissible against Dewdney and not against the defendant Kramer, unless it were made under circumstances that Kramer ratified the statement, if it was made in his presence and he made no denial, we will say."

When the testimony of Chambers was renewed before the jury, the court advised the jury as follows:

"*Anything* that was said by the defendant about the defendant Kramer, outside the presence of Kramer, is not admissible as evidence against Kramer, because he was not in a position to either deny the statement which allegedly was made against him, or affirm it, so you will have to disregard anything that was said by the defendant regarding Kramer as against the defendant Kramer." [Emphasis supplied.]

No objection was made to this statement and I do not see how any objection would have been proper.

At the close of Chambers's testimony, the court called attention to the fact that Dewdney had made certain statements to the effect that he had heard that Watson had a large sum of money in his possession, and that two other people in the car (who were not on trial) prob-

ably would have been willing to share in the robbery. Nothing was said at this time about Kramer; nevertheless the court made the following statement:

*"I will tell the jury again and caution the jury* that you cannot receive this evidence as any evidence against Kramer, because Kramer was not present on this occasion. You may only consider it, if you wish to consider it, and it is up to you to determine whether or not you believe the officer's testimony and give his testimony such weight as you think it is entitled to, but it is not admissible against Kramer and it can only be considered as to the defendant Dewdney, and it is up to you whether or not you believe that statement or not." [Emphasis supplied.]

No objection was voiced to this.

After the court denied a motion for judgment of acquittal Kramer's counsel rested his case without calling any witnesses, as did Dewdney's counsel.

Appellant complains that the court, in its charge, did not instruct the jury that the above statements were not allowed to be used against appellant. However, the court had, on two separate occasions, done this. On being asked by the court, after its charge, if he had any objections to the charge, counsel for Kramer answered that he had none; and, in response to the court's query as to whether or not he wished to request any further instructions, he answered that he did not. As a matter of fact, apparently satisfied that the jury had been properly instructed not to use the statements

against Kramer, Kramer's counsel made the following argument, among others, to the jury:

"Now, when Mr. Chambers testified, he said he had a conversation with Mr. Dewdney, and that Mr. Dewdney said, Yeah, Kramer was in on it with me. Now, His Honor has instructed you that you are not to give any weight whatsoever to that testimony as far as Mr. Kramer is concerned. You owe that to Mr. Kramer, that that is not admissible against him, and that is the only testimony that the Government produced that Mr. Kramer may have made an agreement with Mr. Dewdney. I caution you again about Mr. Dewdney, that what Mr. Dewdney said that Mr. Kramer had done is not admissible against him. You have to banish that from your mind, and once you have banished that, what do you have?" [1]

At no time did Kramer's counsel ask for a severance nor for a mistrial; his requested instructions had been given; and he was content to go to the jury on that state of the case. Having done so, it is too late for appellant to argue that the case should be reversed on this ground. Appellant could not take his chance of an acquittal and, having been disappointed in the result of the trial, seek a reversal on the admission of the statement which had been accompanied by proper safeguards from the court. At any rate, I feel sure that, in making the argument he now makes, appellant underestimates the intelligence and sensitivity of the jury and fails to realize

---

[1]. The Government, in its brief, cogently summarizes the answer to the question "what do you have?" as follows:

"The evidence established that appellant:

"1. Knew the victim, the co-defendant, and the persons in the car.

"2. Was with co-defendant for a number of hours on the night in question and also in the car with Stant who knew enough about the robbery plans to tip off the victim.

"3. Was in his car with co-defendant when he tried the door the first time.

"4. Walked down the alley with Dewdney from the parked car then paced back and forth in the alley looking at the house while co-defendant sought to pry open the front door.

"5. Moved down the alley when Dewdney came to the back door and broke in.

"6. Went in the opposite direction of his parked automobile after the shooting. * * *"

that there can be no presumption that the jury ignored the court's instructions. Further, I do not know what more the judge could have done than he did.

I might add that it is not unusual, where parties are jointly indicted, for the Government to introduce evidence against one co-defendant even if another co-defendant may be implicated, provided the jury is clearly instructed that the evidence can be used only against the party against whom it is directed. In Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225 (1939),[2] the court stated what I have always understood to be the rule in the District of Columbia and elsewhere. There the court said:

> " 'The general rule is that persons jointly indicted should be tried together. Granting separate trials is a matter of discretion. The mere fact that admissions have been made by one which are not evidence as against the other is not a conclusive ground for ordering the parties to be tried separately.' Commonwealth v. Bingham, 158 Mass. 169, 33 N.E. 341, 342. In examining the evidence certified, we find nothing which shows that either accused sustained any prejudice by the course adopted." 70 App.D.C. at 93, 104 F. 2d at 226.

Here also there is nothing to show prejudice, as the court plainly and to the satisfaction of counsel—for no objection to the action of the court was taken—instructed the jury that the statement was not to be used against Kramer; and,

as stated, his counsel reemphasized the point in an apparent effort to show weakness in the case against Kramer, a strategy that failed. Unless we are to assume that the jurors disobeyed the court's instructions and disregarded their oaths as jurors, we must assume that they followed the court's instructions.

There having been no objections made to the court's admonition to the jury, the only ground for reversing the case is the plain error rule. Of this rule the Eighth Circuit, as late as October 30, 1962, said [Black v. United States, 8 Cir., 309 F.2d 331, 342]:

> "This Court has 'repeatedly held that the plain error rule should be *applied with caution and should be invoked only to avoid a miscarriage of justice.'* Johnson v. United States, 8 Cir., 291 F.2d 150, 156. Similar pronouncements of this Court as to the noticing of plain error may be found in: Page v. United States, 8 Cir., 282 F.2d 807, 810; Bell v. United States, 8 Cir., 251 F.2d 490, 494; Kreinbring v. United States, 8 Cir., 216 F.2d 671, 674; Mitchell v. United States, 8 Cir., 208 F.2d 854, 858. We are convinced from the record that this case presents no occasion to invoke this rule." [Emphasis supplied.]

In this case, I am, as was the court in Black, "convinced from the record that this case presents no occasion to invoke this rule," and I have, I think, demonstrated this.

---

2. And see Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed. 2d 278 (1957); Robinson v. United States, 93 U.S.App.D.C. 347, 210 F.2d 29 (1954); Hall v. United States, 83 U.S. App.D.C. 166, 168 F.2d 161, 4 L.Ed.2d 1193, cert. denied, 334 U.S. 853, 68 S.Ct. 1509, 92 L.Ed. 1775 (1948), a first degree murder case, where the court said:
> "Hall and Gray assert that their motions for severance were improperly denied. It is the general rule that persons jointly indicted should be tried together, and granting separate trials is a matter of discretion. The mere

fact that admissions have been made by one which are not evidence as against the others is not a conclusive ground for ordering the parties to be tried separately. Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225. Nothing in the present record indicates an abuse of discretion in ordering the appellants to be tried together. The court duly limited the effect of evidence introduced which was competent against one defendant and incompetent as to the others." 83 U.S.App. D.C. at 168, 168 F.2d at 163.