**UNITED STATES of America,
Appellee,**

v.

**Domenick CASALINUOVO, Defendant-
Appellant.**

**No. 551, Docket 29648.**

United States Court of Appeals
Second Circuit.

Argued June 21, 1965.

Decided Aug. 2, 1965.

Robert L. King, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. Southern District of New York, New York City, on

the brief, James M. Brachman, Asst. U. S. Atty., of counsel), for appellee.

Jesse Rothman, New York City (Edward Cherney, New York City, of counsel), for appellant.

Before MOORE and ANDERSON, Circuit Judges, and LEVET, District Judge.*

MOORE, Circuit Judge:

Domenick Casalinuovo was indicted on one count for unlawfully possessing certain goods known to have been stolen from interstate commerce in violation of 18 U.S.C. § 659. The other count of the indictment charged Joseph James Percodani with having so stolen the goods. No motions for a severance having been made, they were tried together before Judge Murphy and a jury, and were each found guilty. Casalinuovo appeals (Percodani is appealing separately) claiming that the Government failed to establish his unlawful "possession" of the goods and that the trial court committed reversible error in allowing statements by Percodani to be read to the jury without deletion of references to Casalinuovo.

The evidence establishes at least the following. On August 26, 1964, six cartons and one hamper containing men's and women's slacks and shorts, of value in excess of $100, were being shipped by truck from Pennsylvania to New York City. The goods were not delivered to the consignee, who so informed the carrier responsible for the shipment. Percodani, its employee, was the driver. The theft was reported to the F. B. I. the next day, and on August 28th Percodani was arrested by F. B. I. agents Fuson and Roberts. He then executed a signed statement; a second statement was executed on August 31st. That day agent Fuson swore out a warrant for the search of the premises at 116 Mott Street, which he and agent Roberts executed the same day. At that address, they encountered appellant, two children, and one Sandra Stevens, who was a part owner of the building. (Appellant's daughter and another of his relatives owned the other interests in the building.) The agents identified themselves as such and advised both Stevens and appellant that they had a right not to say anything, that anything they said could be used against them in court, and that they could consult counsel before making any statements. Stevens then said that appellant was the janitor of the building, and she requested him to show the basement to the agents. He took the agents to a courtyard which provided access to the basement rooms. There was a steel door bearing a heavy padlock, and the agents asked appellant if he had a key; he indicated that he did not. After appellant's confusing answers about there being no way to get the door open, but that it was open, agent Roberts, thinking that appellant was stalling, said that if appellant did not open the door or tell them how to open it they would have to break it open. Appellant answered "that's up to you," and he "just stood there" when Roberts asked him to help unlock the door. After Roberts failed to open the lock by pulling on it "with all the force" he could exert, he opened the door with a long, crowbar-like, piece of metal that he had found. The door led to the boiler room and another interior room in which the agents found some radios and other goods, but none of the stolen goods in question.

In the courtyard again, the agents approached another steel door. A chain running through the door frame and a hole in the door was joined on the outside by a closed padlock. A similar conversation followed, with Roberts asking for a key and appellant saying the door was not locked, and again the agents warned that they might have to break the lock. Agent Roberts pulled the lock and the door frame started shaking. Finally, the piece of metal was again used to break the door open. This door led to the meter room and another adjoining interior room in which the agents found the stolen hamper, three of the stolen cartons—all

* Of the Southern District, sitting by designation.

empty—and sixteen pairs of the stolen slacks, of a value exceeding $100. Appellant was then arrested.

There was additional evidence tending to establish appellant's possession of the goods. As superintendent, as the building agent described him, appellant had various duties, including replacement of fuses in the meter room and taking care of conditions such as flooding in the basement. One of the residential tenants at 116 Mott Street testified that early in August she and an electrician had tried to go to the meter room to see if her meter were being used illegally by someone else. They found the door padlocked and the electrician was unable to open it. They were able to enter only after the tenant located appellant, who removed the lock and opened the door. As appellant's body blocked her vision, she could not see if he had used a key in opening the lock. Later, in October, she went down to put a lock on her meter but the basement door was locked from the inside. A man inside made reference to "Mickey" when she asked about getting in. She went upstairs to appellant, addressed him as Mickey, and told him she could not get in; he went down and got the man inside to open the door.

None of the owners stored anything in the basement of the building, and the other two Casalinuovos neither lived in the building nor even had keys to it. A business tenant of the building—owner of a butcher shop—said that he did not store goods in this area of the basement and had not been there for a year. The defense presented another business tenant who said that to replace burned out fuses he had been to the meter room about twenty or thirty times on about ten different days; some he thought were in July and August, but he could not be specific. However, he stored no goods in these rooms. Although he agreed that the door always had a lock and chain on it, he said he never found it locked and was always able to open it himself. It is not apparent how he did so.

Miss Stevens also testified for appellant that the lock was a "dummy lock"

which could be opened by lifting but not by pulling. The Government suggested that her testimony might be biased, as she admitted that appellant was the father of her two children.

The crime in question is "possession" of goods known to have been stolen from interstate commerce, and it cannot be assumed that Congress was intending to impose criminal liability only upon those persons caught red-handed holding goods they have seen stolen from an interstate truck or train. Accordingly, the courts have held the statute to reach "constructive" possession as well as actual possession, i. e., such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession. Cf. Holmes, The Common Law 216 (1881). In charging the jury on the issue of possession, the main one in the case as to appellant, the court said that the question for them was: "Did the defendant Casalinuovo have such possession and control of that room where some of the goods were found so that it can reasonably be said that he had possession of the merchandise?" Appellant had made no requests to charge and also made no objection to the charge given. We think the charge was adequate and the evidence sufficient under it to establish appellant's unlawful possession.

The unlimited variety of goods moving in interstate commerce, combined with almost as unlimited a variety of schemes and means for stealing and disposing of them, make the nature of unlawful possession a highly factual matter to be appraised case by case. Consequently an extended comparative discussion of the cases would not be too illuminating. Suffice it to say that the inferences which could be reasonably drawn from the evidence as to appellant's relationship to the goods place the case within the ambit of the cases in which the evidence of possession—actual or constructive—has been thought sufficient. See, e. g., Sterling v. United States, 333 F.2d 443 (9th Cir.), cert. denied, 379 U.S. 933, 85 S.Ct. 333, 13

L.Ed.2d 344 (1964); United States v. Spatuzza, 331 F.2d 214 (7th Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 58, 13 L. Ed.2d 38 (1964); United States v. Crisafi, 304 F.2d 803 (2d Cir. 1962); United States v. Thomas, 282 F.2d 191 (2d Cir. 1960); United States v. Page, 277 F.2d 3 (2d Cir.), cert. denied, 364 U.S. 843, 81 S.Ct. 83, 5 L.Ed.2d 67 (1960); United States v. McNeil, 255 F.2d 387 (2d Cir.), cert. denied, 358 U.S. 836, 79 S.Ct. 59, 3 L.Ed.2d 73 (1958); United States v. DeVivo, 246 F.2d 773 (2d Cir.), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957); United States v. Williams, 194 F.2d 72 (7th Cir. 1952); United States v. Cordo, 186 F.2d 144 (2d Cir.), cert. denied sub nom. Minkoff v. United States, 340 U.S. 952, 71 S.Ct. 572, 95 L.Ed. 686 (1951); Le Fanti v. United States, 259 F. 460 (3d Cir. 1919); United States v. Strickland, 205 F.Supp. 299 (E.D.Mich.1962); cf. United States v. DeSisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964); United States v. Curzio, 170 F.2d 354 (3d Cir. 1948); United States v. De Normand, 149 F.2d 622 (2d Cir.), cert. denied, 326 U.S. 756, 66 S.Ct. 89, 90 L.Ed. 454 (1945). See also Beyda v. United States, 324 F.2d 526 (9th Cir. 1963).

In the cases finding insufficient evidence of possession, the relationship between the defendant and the stolen goods has been far more tenuous than that which the jury could find here. See, e. g., Embree v. United States, 320 F.2d 666, 668 (9th Cir. 1963) (appellant merely knew someone who had whiskey for sale and was able to get price for potential customer); United States v. Minieri, 303 F.2d 550, 556–557 (2d Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 81 (1962) (insufficient that appellant's fingerprint found on invoice which had been in carton before theft and which was found in room with stolen cartons); United States v. Lefkowitz, 284 F.2d 310, 315 (2d Cir. 1960) (insufficient that appellant's fingerprints found with 154 unidentified others on two of 352 large stolen cartons); Pearson v. United States, 192 F.2d 681, 692–693 (6th Cir. 1951) (appellants merely employed by co-defendant to work on his truck for wages but had no authority or control over stolen liquor in truck when acting under his orders); United States v. O'Brien, 174 F.2d 341, 344–345 (7th Cir. 1949) (appellant had merely been sitting with co-defendant in latter's truck before stolen butter was found in truck); United States v. Wainer, 170 F.2d 603, 606 (7th Cir. 1948) (appellant had only falsely claimed to be "boss" of liquor store where beer whose purchase he had arranged was being stored in usual storage place for beer); United States v. Russo, 123 F.2d 420, 422 (3d Cir. 1941) (appellant and co-defendant owned garage and truck within it, but appellant seldom entered and was unaware of stolen cigarettes hidden in truck); Caringella v. United States, 78 F.2d 563, 566 (7th Cir. 1935) (appellant merely owned open garage where thieves were found unloading truckload of stolen eggs); Niederluecke v. United States, 21 F.2d 511, 512–513 (8th Cir. 1927) (appellant had terminated lease on and was unable to enter garage where stolen car found); cf. Robinson v. United States, 333 F.2d 323, 326 (8th Cir. 1964) (insufficient evidence of value of dresses actually possessed by appellant, and dresses actually possessed by co-defendant could not be counted as being possessed by appellant); Sorenson v. United States, 168 F. 785, 798–800 (8th Cir. 1909) (burglary and larceny not established by proof that one of stolen watches was found three weeks later, when appellant was in jail, in bureau drawer in house occupied by wife).

The Cordo case deserves added mention, for there a defendant's constructive possession was found sufficiently established although admittedly it was not exclusive, and the space where the hot goods were stored was not owned by the defendant but was one to which he had non-exclusive access and knew would be unused for the few days needed to store the goods. Much the same may be said of appellant's relationship here to the cellar room. Also, whether the lock was

actually locked or not, he obviously had a fluency in manipulating it that was not possessed by all of the building's tenants and which, quite significantly, was not made known to one tenant whom he knew did not know how to open this "unlocked" door. That another tenant may have known how to do so is less significant when that same tenant also says that he did not store anything in this part of the cellar; most likely, his excursions went no further than the meter room.

██ The remaining element of the crime—knowledge that the goods were stolen from interstate commerce—can usually be established by proof of the unexplained possession recently after the theft in circumstances making innocence unlikely. See United States v. Minieri, supra, 303 F.2d at 554; cf. Wilson v. United States, 162 U.S. 613, 619–620, 16 S.Ct. 895, 40 L.Ed. 1090 (1896). Even if the presumption of guilty knowledge is weakened when the possession is constructive as opposed to actual, see United States v. Russo, supra, any necessary added circumstances were present here in appellant's evasive conduct and statements at the time of the search. Cf. United States v. DeSisto, supra, 329 F.2d at 931, 935; United States v. Farina, 218 F.2d 62, 63 (2d Cir. 1954); United States v. Smolin, 182 F.2d 782, 785–786 (2d Cir. 1950). Whether or not "a lack of desire to cooperate" with searching police "is the privilege of every citizen," as appellant claims, the failure to do so by a building superintendent, when under orders from the owner to show the agents the cellar, at the risk of damage and further damage to the building, is another matter.

██ Appellant's second claim fares no better. There is no dispute about Percodani's statement to the F.B.I. being inadmissible for any purpose against appellant. Indeed, in its opening statement the Government told the jury that "Judge Murphy will instruct you, as to that particular confession, that that is admissible in evidence solely against Percodani, not against Casalinuovo." Even before that, at the side-bar, the Government had made known its intention to introduce the confession in evidence. When the confession was offered, the court observed that it was "only against the defendant Percodani," and the Government repeated that it was "only against Percodani; not as evidence against the defendant Casalinuovo." Percodani's attorney then requested a *voir dire* and on being refused at that time he objected to the admission of the confession in evidence. The objection was overruled. Appellant made no objection. The Government then asked the agent who had been testifying to read the contents of the statement to the jury. Appellant did not object, but the court said that the agent could not read it. The Government agreed and said it would "hold that." When the agent later testified about Percodani's oral statements it was more than once made clear that the testimony related "solely to the defendant Percodani," until the Government indicated that the rest of the testimony "will relate also or is offered also, against the defendant Casalinuovo." At the end of the Government's case, the court indicated that it thought that somebody was going to read the confessions to the jury, although the jury could examine them themselves, but that it had objected to the agent's reading of the confession "because agents are not here for that purpose." That was the Government attorney's job. At another side-bar discussion, appellant started to join in Percodani's motion to suppress the confession on the ground that it was not voluntary. However, the court again noted that the jury would be told several times that the confessions were binding only on Percodani. Percodani's motion was denied.

Then on summation, when referring to the confessions, the Government again cautioned the jury that "they may be considered as evidence only against the defendant Percodani." Appellant then objected for the first time, and in the presence of the jury asked the court "to direct the United States Attorney to delete any portion of that confession which might infer or in any way implicate my

client, the defendant Casalinuovo." The court refused, but told the jury "that these statements that are being read to you are the statement of Percodani, and you are not permitted in any shape, form or manner to consider anything in these statements against the other defendant, even though his name is mentioned. In other words, you are restricted, in considering these statements, to consider them only in relation to the defendant who gave them." Appellant objected and the Government then read the statements.

The first was two pages long and mentioned "Nick" four times and the address of "his store" once. The one-page supplemental statement mentioned "Nick" and the address each once. Apart from the agents' names, the first confession mentioned only one other name, that of Walter, Percodani's helper, who had been a Government witness at the trial. No one else was mentioned in the second confession. Neither after the reading of the confession nor at any other time, did the appellant make a motion for a mistrial.

The final caution came in the court's charge, when the jury was told it could consider the confessions "only with regard to Percodani's guilt. They cannot in any wise, shape or form be considered by you as relating in any way to the guilt of the other defendant, Casalinuovo, even though one of them mentioned Mr. Casalinuovo's name * * *"

In considering whether the trial court was within its discretion in refusing to grant the belated request for deletion, we must begin with the Supreme Court's decision in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957), specifically concerning a post-conspiracy confession by a co-conspirator, where the considerations relevant to the exercise of discretion in this area were discussed. Significant to the Court in the totality of circumstances to be considered were the facts that other admissible evidence apart from the extra-judicial statement was sufficient to sustain the conviction, 352 U.S. at 236, 77 S.Ct. 294 (which we have just found to be so here);

that a clear and emphatic limiting instruction was given, 352 U.S. at 234, 242, 77 S.Ct. 294 (as was done here several times); that the case was easily understood, 352 U.S. at 241, 77 S.Ct. 294 (as was this one); that it did not involve a large number of defendants (5) and a multiplicity of evidentiary restrictions, 352 U.S. at 241, 77 S.Ct. 294, (again like this one); that the separate interests of each defendant were emphasized throughout, 352 U.S. at 241, 77 S.Ct. 294 (as was so here); that each defendant was represented by a separate attorney, 352 U.S. at 241, 77 S.Ct. 294 (as was so here); that no request for a separate trial was made, 352 U.S. at 241, 77 S.Ct. 294 (as was not done here); that the statement was read to the jury only after all the case against the appellant was in, 352 U.S. at 241–242, 77 S.Ct. 294 (as was so here); that there was no indication that the jury did not follow the court's instructions, 352 U.S. at 242, 77 S.Ct. 294 (there is no such indication here); that the confession would not be subject to any objection even if it did not refer to appellant, 352 U.S. at 237, 77 S.Ct. 294 (there is no taint here, assuming the court and jury to be correct as to voluntariness); that the confession was a significant part of the case against the declarant, cf. 352 U.S. at 233, 239, 77 S.Ct. 294 (as it was here); that the references to the appellant were largely cumulative, 352 U.S. at 242, 77 S.Ct. 294 (which was not so here, the case on possession being close); and that deletion was not practicable, 352 U.S. at 237, 77 S.Ct. 294 (which was not clearly so here).

The references in the confession to the place where the goods were left by Percodani were useful to the Government in its case against him, because the confession, the validity of which was a question for the jury, was then corroborated by the fact that the goods were indeed found there. Moreover, the location was significant because the indictment charged, and the jury had to find under the court's charge, that Percodani stole the goods in the vicinity of Hester and Mulberry Streets, which the confessions mentioned.

It might have been feasible to replace references to appellant with "a certain person," as appellant now suggests on appeal, but after appellant's counsel asked in front of the jury for deletion of all references to "the defendant Casalinuovo," it is scarcely conceivable that appellant could be prejudiced by the failure to delete. The jury could hardly have done other than to read in his name. On the other hand, compliance with the request for deletion, made when it was, would have necessitated an undesirable—and unnecessary, considering the ample warning that the confessions were going to be read to the jury—interruption of the Government's summation. Appellant has not established that there was an abuse of discretion. See, e. g., United States v. Castellana, 349 F.2d 264, 272–277 (2d Cir. 1965); Roth v. United States, 339 F.2d 863 (10th Cir. 1964); United States v. Elgisser, 334 F.2d 103 (2d Cir.), cert. denied sub nom. Gladstein v. United States, 379 U.S. 879, 85 S.Ct. 148, 13 L.Ed.2d 86 (1964); United States v. Viale, 312 F.2d 595 (2d Cir.), cert. denied, 373 U.S. 903, 83 S.Ct. 1291, 10 L.Ed.2d 199 (1963); cf. Garcia v. United States, 315 F.2d 679 (5th Cir. 1963). Indeed, in Elgisser the court's instructions were held to be sufficient to counteract any prejudice when the testimony of two named co-conspirators, neither of them on trial, was admitted subject to connection, and the conspiracy count was later dismissed. However, there the testimony was potentially admissible against all the defendants and, being oral, was not readily redactable.

Cases looking the other way are distinguishable on their facts, including the two from the D.C.Circuit heavily relied upon by appellant, Kramer v. United States, 115 U.S.App.D.C. 50, 317 F.2d 114 (1963); and Oliver v. United States, 118 U.S.App.D.C. 302, 335 F.2d 724 (1964), cert. denied sub nom. Crump v. United States, 379 U.S. 980, 85 S.Ct. 686, 13 L.Ed.2d 571 (1965). Kramer involved a prosecution for housebreaking under the D.C.Code. With the jury absent, the court and counsel heard the content of the witness' testimony as to the co-defendant's oral confession. The narration included a question by the witness asking whether Kramer was there at the scene of the crime, and the co-defendant's answer that he was. This was the only reference to Kramer. Kramer's counsel objected that that testimony would be inadmissible against Kramer, and the court agreed and so stated. Then, before the jury the prosecutor asked the witness to relate the implicating conversation, and he proceeded to repeat the whole thing, including the question and answer just noted. Neither the court nor the prosecutor made any attempt, as would have been possible, to prevent him, once he repeated the question, from repeating the damaging answer that had just been called inadmissible. Reversible error was found despite the court's instruction to the jury that the statement was admissible only against the co-defendant. The question and answer implicating Kramer was, as the court noted, "no essential part whatever" of the case against the co-defendant. 317 F.2d at 116. Given that fact and the court's remarks at the side-bar, it is doubtful whether Kramer's counsel could have been expected to do any more than he did. In this case, however, it was obvious from the beginning that if the confession were in evidence and thus available to the jury there would be references to appellant unless deletion were requested at an appropriate time.

Oliver was a capital case in which four defendants were on trial for the "unusually vicious sexual assault upon a fourteen-year-old girl." 335 F.2d at 728 (dissenting opinion). One of the defendants had written a confession naming and implicating nine boys, including himself and his three co-defendants. When the confession was introduced, an objection was made on behalf of the three co-defendants, and the court instructed that any references in the confession to any others than the defendant who made it were to be disregarded. Then the police officer who was testifying began to read the confession, getting partly through the first sentence, which merely listed all

the nine names. The co-defendants again objected and counsel made it apparent that he thought that the court had instructed the witness not to read the co-defendants' names. 335 F.2d at 727 n. 4. Deletion of references to the co-defendants would have been "entirely feasible" (the Government conceded that they could have been masked over), and it would have had no effect on the case against the co-defendant. 335 F.2d at 728 n. 7. None of this was so in the instant case. Moreover, deletion or masking of three of nine names of persons involved in the crime, in a case against four defendants would not have left the same eloquent anonymity as would have resulted here.

As for other cases, in Greenwell v. United States, 336 F.2d 962 (D.C.Cir. 1964), the co-defendant's confession had been held on appeal to be inadmissible even against him, so that there had been no valid basis for its admission in evidence. In United States v. Cianchetti, 315 F.2d 584 (2d Cir. 1963), there had been no limiting instructions as to a tape recording of a co-conspirator's conversation with a person not involved in the case. In United States v. Jacangelo, 281 F.2d 574 (3d Cir. 1960), deletion of the one sentence involved would have been easy, and the statement, far more than being simply inadmissible as hearsay, was also inadmissible because in mentioning other crimes it would have been highly prejudicial. In United States v. Gordon, 253 F.2d 177 (7th Cir. 1958), the statement was made years after the crime and even after the first trial in the case; moreover, it was exculpatory with respect to the declarant and was of no aid at all to the Government's case against him. [Cf. United States v. Kelly, 349 F.2d 720 (2d Cir. 1965).] In United States v. Sansone, 206 F.2d 86 (2d Cir. 1953), which was prior to Delli Paoli, we reversed because a witness testified "over the strenuous objection of counsel for the appellant," id. at 88, as to a post-conspiracy statement by a named co-conspirator who had already pleaded guilty and was not then on trial; the trial court later had decided that the testimony was inadmissible and had instructed the jury to disregard it. Accord, Gambino v. United States, 108 F.2d 140 (3d Cir. 1939).

Affirmed.