**UNITED STATES v. WAINER.**

No. 9536.

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1948.

SPARKS, Circuit Judge, dissenting.

---

Richard G. Finn, of Chicago, Ill., for appellant.

Otto Kerner, Jr., Jack Arnold Welfeld, and John J. Kelly, Jr., Asst. U. S. Attys., all of Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and SPARKS and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The defendant-appellant was indicted with six other individuals and Crosstown Liquor Mart, Inc., a corporation, for a violation of 18 U.S.C. Sec. 409,[1] and for a conspiracy to violate said section. After a plea of not guilty and without withdrawing the same, all of the defendants made a motion to quash the indictment, which was overruled by the court. The appellant's motion for a separate trial was likewise overruled. In our view of the case, it will not be necessary to discuss these motions. A jury was waived and the case tried by the court. At the conclusion of the Government's case, all of the defendants on their motions for acquittal were dismissed on the conspiracy count and all except the appellant on the substantive count. At the conclusion of all the evidence, the appellant made a written motion for acquittal which was denied. He was found guilty, and from judgment pronounced on this finding, he has appealed.

The appellant's last motion presents the sole question for our consideration, namely: Was the evidence sufficient to support the conviction?

The indictment under which the appellant was convicted charged that the defendants "did unlawfully, knowingly, wilfully and feloniously receive and have in their possession certain goods and chattels, to wit, 535 cases of Schlitz beer, which said beer was a part of an interstate shipment * * * knowing the same to have been stolen."

We shall assume, without reciting all the facts, that the beer in question was stolen from an interstate shipment on or about May 10, 1946. Did the appellant receive and possess this beer knowing it had been stolen? The evidence most favorable to the Government shows that the appellant's brother was one of the owners of the defendant Crosstown Liquor Mart, Inc., hereafter referred to as Crosstown, and one Robert J. Burns, Jr., had been a bartender at Crosstown, where the defendant became acquainted with him in 1944. The appellant was a whiskey broker and went frequently to Crosstown to pick up telephone calls that had been left for him concerning business matters, and he spent considerable time loafing about the place. The appellant was not employed by Crosstown nor did he have any financial or other interest therein. In May 1946, he met Burns, Jr., in the package room at Crosstown and in the course of the conversation, Burns told him he was helping his father, who ran a tavern. The appellant asked him how the beer situation was, and Burns said his father had connections where he could obtain all the beer he wanted. The appellant told Burns that any time his father had more beer than he wanted to let the appellant know, as he knew Crosstown was interested in some beer. Later, on May 18, 1946, the appellant again saw Burns, Jr., at Crosstown. Burns asked the appellant if Crosstown still needed some beer, to which the appellant replied that it did. Burns said his father would let Crosstown have about two hundred cases, that his father had a small place and was crowded. Burns, Jr., did not know the price of the beer but returned later with his father and introduced him to the appellant. The appellant agreed to purchase from Burns, Sr., two hundred cases of beer at $4 per case, with an allowance of 75¢ per case on the returned cases. The regular price for this beer was $2.65 a case.

---

[1] 1948 Criminal Code, 18 U.S.C.A. § 659.

Burns, Sr., said that he would deliver it that night about eight o'clock, as soon as he was relieved by his bartender.

When the appellant and his wife returned that evening about nine o'clock to Crosstown, the appellant saw some Schlitz beer being unloaded in the storeroom of Crosstown. A police officer named Majher was standing by at the time. The beer was being unloaded at the place usually used for loading and unloading. The appellant told Burns, Jr., who was there, that Howard Siats, another co-defendant who was acquitted and who was secretary and treasurer of Crosstown, would pay Burns for the beer. Shortly thereafter, the appellant and his wife went home. The beer was stored in the usual place in Crosstown's storeroom and remained there unconcealed until June 3, 1946.

Shortly after five o'clock on the evening of June 3, the appellant entered Crosstown. Officer Glazer of the Alcohol Tax Unit was there. Glazer saw some beer being loaded into a truck and he asked the appellant for an invoice for it. The appellant said that he did not have any invoice for the beer. There is no evidence that the appellant ever handled or issued any invoices for anything around Crosstown.

Officer Donovan of the Chicago Police and Officer Foley of the Federal Bureau of Investigation came into Crosstown about this time. Foley exhibited his credentials to the appellant and asked him who he was. The appellant replied that he was the boss.[2] Foley asked the appellant if he had an invoice for the beer stacked in the Crosstown storeroom. The appellant said he had no invoice. Upon being asked by Foley where he had obtained the beer, the appellant without hesitation told him he had obtained it from Burns, a tavern owner near Sixty-third and Harper, and the appellant promised to point out Burns to Foley if he came in Crosstown that evening. Foley pointed to the stack of beer in the storeroom of Crosstown and said: "Mr. Wainer, this beer has been stolen." This is the first evidence that anyone told the appellant the beer had been stolen.[3] Officer Donovan corroborates Officer Foley.

There was some evidence by the officers that there were no revenue stamps on the cases of beer when they first saw the cases. It was in evidence without dispute that beer was often delivered without stamps affixed, and the stamps sent separately in an envelope and later affixed. There is no evidence that the appellant knew that the beer did not have stamps on it. The officers testified that the next time they saw the cases, some stamps had been freshly put on them. There is not a word of evidence that the appellant had anything to do with affixing these stamps.

Does this evidence show that the appellant received or possessed the beer? The evidence shows only that the appellant arranged for Crosstown to purchase some Schlitz beer from one Burns, Sr. Burns delivered the beer not to the appellant but to Crosstown, who received it openly and made no effort to conceal it but stored it in the storeroom where such merchandise was usually kept. Crosstown paid for the beer and kept possession of it from the time Burns delivered it on May 18 until June 3. There is not a scintilla of evidence that the appellant had anything to do with the receiving, storing, possessing, handling, or disposing of any of the beer. Whatever was done with reference to this beer was done by Crosstown. Even the empty cases from which Crosstown sold some of the beer were returned by Crosstown to the agent of the brewery from which the beer was alleged to have been stolen.

Under these circumstances, the appellant has not been shown to have ever received or possessed the beer in question. The Government admitted on argument here that the only evidence in the record to sustain these essential facts is the statement by the appellant to the officers when they came into Crosstown on June 3. At that time, it will be recalled, the officers, after identifying themselves, asked the appellant who he was and he replied, "I am the boss." This statement did not possess the appellant

---

[2] This the appellant denied.

[3] The appellant testified positively that Burns did not tell him that the beer was stolen, and that he would not have bought it for Crosstown if he had known it had been stolen.

of the beer. Certainly it was not evidence that he had at any time before received it. To "receive" means to "accept." United States v. Winnicki, 7 Cir., 151 F.2d 56, 57. To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature. State v. Cooper, Mo.App., 32 S.W.2d 1098, 1099. There is no evidence that the appellant ever accepted any of the beer in question from anyone. If an inference of control is to be deduced from his statement, "I am the boss," made while standing in the building where the beer was stored, such control was too fleeting and shadowy to amount to possession.

 Even more unsubstantial is the evidence that the appellant knew the beer had been stolen. He contracted for the beer for a price much in excess of the market. We are aware of cases holding that a purchase below the market may support an inference of knowledge that it was stolen, but the same inference is refuted from a sale made substantially over the market, even though the product was sold in a tightening market. See People v. Rubin, 361 Ill. 311, 328, 197 N.E. 862. The fact that no invoice accompanied the sale and delivery of this beer is urged as a circumstance to show guilty knowledge. The appellant did not have and could not produce any invoice for the beer, because he was not the purchaser but only arranged the sale to Crosstown. Furthermore, Burns was a tavern owner, disposing of excess beer for cash to Crosstown, not to the appellant. That an invoice was not furnished under such circumstances would not be unusual and is certainly not proof that the appellant knew that the beer thus sold had been stolen. The absence or presence of stamps we have already discussed.

The total evidence, in our opinion, is not sufficient to show guilty knowledge on the appellant's part. The whole offense of receiving and possessing the beer, knowing it to have been stolen, has not been proved. Cherry v. United States, 7 Cir., 78 F.2d 334, 336; Caringella v. United States, 7 Cir., 78 F.2d 563. This evidence merely arouses a suspicion that the appellant had some interest in Crosstown and the beer purchased, and that maybe he knew that maybe the beer had been stolen. We cannot agree that the defendant should go to prison on suspicion, even though it were a robust suspicion which this is not.

The judgment of the District Court is reversed.

SPARKS, Circuit Judge, dissents.