## UNITED STATES v. O'BRIEN et al.
### No. 9759.

United States Court of Appeals
Seventh Circuit.
May 3, 1949.

Rehearing Denied May 19, 1949.

---

Maurice J. Walsh, of Chicago, Ill., for appellants.

Otto Kerner, Jr., U. S. Atty., and Jack Arnold Welfeld, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before MINTON and DUFFY, Circuit Judges, and LINDLEY, District Judge.

MINTON, Circuit Judge.

The defendants were indicted and convicted on a count which charged them with the possession of 27 cases of butter which had been stolen from an interstate shipment, knowing the same to have been stolen. The statute concerned is 18 U.S.C. § 409 [now § 659], the pertinent parts of which read as follows:

"(a) Whoever shall—* * *

"(2) embezzle, steal, or unlawfully take, carry away, or conceal, or by fraud or deception obtain from any—

"(i) railroad car, motortruck, wagon, or other vehicle,

"(ii) station house, platform, depot, or terminal,

"(iii) steamboat, vessel, or wharf,

"(iv) aircraft, airport, aircraft terminal or air navigation facility,

"any goods. or property moving as or which are a part of or which constitute an interstate or foreign shipment of freight or express, with intent to convert such goods or property to his own use, or shall buy, receive, or have in his possession any such goods or property, knowing the same to have been embezzled or stolen; * * *."

In the court below a motion to suppress the evidence was heard and overruled, and

separate motions for acquittal were filed at the conclusion of all the evidence and overruled. These are assigned and discussed as error duly presented below. The defendants present here for the first time their contention that the count upon which they were convicted was defective.

■ We shall first discuss the sufficiency of the evidence to support the verdict and judgment, which is presented by the motions for acquittal. In answering that question, we consider only the evidence favorable to the verdict and such reasonable inferences as the jury may have drawn therefrom. Butler v. United States, 7 Cir., 138 F.2d 977; United States v. Monarch Distributing Co., 7 Cir., 116 F.2d 11.

The following facts are supported by substantial evidence in the record. On November 17, 1947, in the city of Chicago, Illinois, Police Officer Harrington was on his beat at 3 A.M. in the vicinity of the intersection of Emerald Street and Root Street. Emerald Street runs north and south, and Root Street runs east and west between 41st and 42d streets. On the northeast corner of Emerald and Root was a lot on which Safeway Truck Lines parked its truck trailers. An office of Safeway adjoined the parking lot. At the time in question, four truck trailers of Safeway were on this lot. The lot was well lighted. As Officer Harrington was going to a call box on the corner of Root and Halsted streets, a block west of Emerald Street, to make his routine call to headquarters, he heard a truck on Safeway's lot. The throttle of the truck was full and the engine made an unusual noise and attracted his attention. He looked in the direction of the lot and saw a red truck without lights leaving the lot in the vicinity of the trailers. The back of the truck had folding gates.

The officer went on and pulled his box at Root and Halsted streets. He then walked east on the north side of Root Street and as he came to the alley between Halsted and Emerald streets, he saw a truck, similar to the one he had seen leaving the Safeway lot, driving south on Emerald at about forty miles an hour. He returned to the Safeway lot and examined the trailers. One was not molested. The other three were broken open, and the locks and seals were lying close to the opened trailers. One seal put in evidence bore a number and was identified as put on the Safeway truck trailer that had left Mason City, Iowa, for Boston, Massachusetts, loaded with butter. It was a railroad seal used by the creamery that shipped the butter to seal the trailer and bore the markings "M. C. and C. L. R. R. Co.," which were the abbreviations for "Mason City and Clear Lake Railroad Company." It was the usual seal used by the creamery company. Officer Harrington observed cartons labeled Hillcrest butter and Tootsie Roll candy in the trailers.

The officer then went south on Emerald Street and took a look at a truck parked on the east side of the street about three hundred feet south of Root. The defendants came north on Emerald, walking on the west side of the street, from the direction of 42d Street. The officer came out from behind a truck parked on the east side of the street, crossed the street, and flashed his light on the defendants, who were attired in workmen's clothes. O'Brien made some "disparaging remark" to the officer, but when the defendants recognized the policeman, they apologized. The officer, addressing defendant Keating, asked where he had been and where he was going. His answer was that he was going to the Blackout Tavern and had come from Henny Burns' barn, which was located at 4210 Emerald Street, where he was employed as a watchman. The defendants gave their right names. The officer asked Keating if he wasn't driving a truck that morning, referring to the one he had seen going south on Emerald Street about forty miles per hour when he was walking east on Root Street after he had pulled his box. Keating said he had been driving a truck but that it belonged to one Frankie McDermott, and that he, Keating, would take the officer and show him the truck.

They proceeded south on Emerald Street and were crossing 42d Street when Keating said, "In here is the truck I was driving." The officer saw parked in front of 4210 Emerald Street, on the west side of the street, the red truck he had seen twice before that morning, and he said that was

the truck he wanted to see. The officer and the defendants walked over to this red truck which had folding gates in the rear. The officer flashed his light in the back of the truck and saw cartons labeled Hillcrest butter and Tootsie Roll candy, similar to the merchandise he had seen in the trailers of Safeway that had been broken open. As they were walking towards this red truck, Keating had said he was better known by the name of Curley. On each side door of the truck was painted "Curley's Motor Service." It was a cold night, but the radiator of the truck was warm. Keating denied it was his truck, but it was definitely shown later to be Keating's truck. O'Brien said the truck must belong to some "so-and-so" in the hotel across the street, whereupon Harrington said to the defendants, "If you know so much about it, let's go over there and ascertain who owns the truck." O'Brien was intoxicated but Keating, although he had been drinking, was not intoxicated.

They went to the hotel, the officer called the police station, and the wagon and officers came and took the defendants to the station where they were locked up. Harrington did not go to the station but returned to safeguard the trailers. He called Morrison, chief dispatcher of Safeway, and reported that the trailers had been broken into. Morrison came to the parking lot and examined the trailers, one of which was loaded with butter shipped from Mason City, Iowa, to Worcester, Massachusetts. Twenty-seven cases of butter had been taken from this trailer and 27 cases of similar brand and package of butter were found in Keating's truck.

Officer McInerney, one of the officers who came in response to Harrington's call to the station, testified that he recognized Keating, and that Keating told him the truck (Curley's truck) was his. McInerney testified he did not accompany the defendants to the station but stayed to guard the truck, that he examined it and saw butter therein. About two hours later, McInerney returned to the station where the defendants were being held. He asked Keating to give him the keys to the truck. Keating replied that he might get in trouble if he admitted he had the keys. McInerney said, "If you give me the keys I will say I found them." Keating gave him the keys. They fit the locks on Keating's truck, and it was driven to the police station and 27 cases of butter were taken out. In his police report McInerney did say he found the keys on the street in front of the hotel.

Special Agent Frankfurt of the Federal Bureau of Investigation testified that the matter was reported to the F.B.I. at 5 or 6 A.M. November 17. Frankfurt interviewed the defendants at the station about ten o'clock that morning. About three o'clock that afternoon he consulted the United States District Attorney on the case. It was then too late in the afternoon to arraign the defendants before the United States Commissioner, who had left his office for the day. The defendants were arraigned before the Commissioner the next day, November 18, at 11 A.M. or 2 P.M., Frankfurt testifying that he could not recall the exact time.

The only evidence in this record as to the defendant O'Brien is that he came to Zigmond's Tavern at 38th and Wallace streets about eight o'clock on the evening of November 16, 1947. About eight-thirty, Keating came in and they drank considerable whiskey while in the tavern and remained there until it closed at 2:20 A.M. Immediately after the tavern closed, Keating and O'Brien were seen by the tavern proprietor sitting in Keating's red truck outside the tavern. They were having trouble getting the motor started. The motor was very noisy because of the way the muffler was constructed. Neither the tavern keeper nor anyone else saw Keating and O'Brien leave. There is evidence that the defendants were later at Curtin's Tavern, near Root and Emerald streets, about a mile from Zigmond's. How the defendants got over to Curtin's Tavern does not appear. Presumably they drove in Keating's truck. After leaving Keating's truck they were accosted by Harrington after 3 A.M. on Emerald Street near Root.

■ We think it clear that this evidence does not sustain the verdict and judgment of conviction as to O'Brien. He is not shown to have possessed the stolen butter at all. He was shown to have been sitting in the truck with Keating in which the

stolen goods were later found, approximately an hour before Officer Harrington's attention was attracted by the loud noise of the red truck leaving Safeway's lot. No showing was made that the truck contained the stolen butter at the time O'Brien was seen sitting in it outside Zigmond's Tavern. He was never seen about the truck exercising any control, dominion, or authority over it, either before or after the stolen butter was found in it. There may be a suspicion that O'Brien and Keating had the same interest in this truck for the occasion and in the stolen butter that was found in the truck, but it is only a suspicion and not enough to send O'Brien to the penitentiary. United States v. Wainer, 7 Cir., 170 F.2d 603. If Keating is guilty, the most that can be said of O'Brien is that he was associating with a guilty man. The defendant O'Brien's motion for acquittal should have been sustained.

■ We think it equally clear on this record that the evidence is sufficient to sustain the conviction of Keating. It is clear the butter was stolen from an interstate shipment. The defendants were found not guilty of the stealing. On the question of possession we think the evidence is sufficient, as the butter was stolen and taken away in a truck that answered the description of Keating's truck. Keating's truck was found only about a block and a half from Safeway's lot, with the stolen butter in it, and, although the night was cold, the radiator of the truck was warm; Keating had admitted driving a truck that morning although he claimed it was another truck; and Keating had the keys to that truck, the stolen goods were locked therein, and the keys Keating had opened the lock.

■ As to Keating's knowledge that the goods had been stolen. We direct attention to possession by the defendant Keating of the stolen butter in his truck so soon after a truck answering the description of his truck left the scene of the stealing at this unusual hour of the morning. Under such circumstances possession of goods so recently stolen is sufficient, in the absence of any conflicting evidence to explain how the goods came into the defendant's possession, to support a finding of the jury that the possessor of such goods knew they had been stolen. Wilson v. United States, 162 U.S. 613, 619–620, 16 S.Ct. 895, 40 L. Ed. 1090; Janow v. United States, 5 Cir., 141 F.2d 1017.

■ The defendants did not testify, and no evidence of any consequence was introduced by them. Scienter is usually a fact to be deduced from circumstances. We think the circumstances here were such as to sustain the jury's finding of guilty knowledge.

■ The motion to suppress evidence was properly overruled. The evidence sought to be suppressed, namely, the contents of the truck and the keys to the truck, was obtained by state officers after the arrest and incarceration of the defendants. The stealing took place under such circumstances as to give the officer probable cause to believe the defendants had committed the crime. They were placed under arrest after Officer Harrington observed the stolen butter in Keating's truck. He then took the defendants to the hotel across the street and called the police station for help. That is when the arrest first took place, when the officer's authority was first asserted. The defendant Keating's truck was picked up on a public street with stolen goods plainly visible to the officer by the aid of a flashlight. The use of a flashlight to reveal what had been concealed by natural phenomena does not constitute an unlawful invasion of Keating's rights. Police officers in dealing with investigation of crime are not required to blindfold themselves. If it had been daylight, the stolen merchandise would have been plainly visible. The blanket of night is not the privacy of the defendant. We do not think this constituted a search, but if it did, it was not an unreasonable search. The disclosure of the stolen merchandise to the officer by use of his flashlight established probable cause to justify the arrest of the defendants without a warrant. Since the arrest was lawful, the subsequent acquisition of the keys from Keating and the search of the truck without warrant were also lawful. The fact that the police officers obtained the keys to Keating's truck from him by means of a ruse does not

make the use of said keys illegal. As the District Court observed at the trial, police officers are not required to be too polite. They may match wits with alleged criminals, and in the absence of coercive, abusive tactics, obtain evidence for use in the prosecution. In any event, since Keating was under arrest for probable cause for the commission of a felony,[1] the police officers had a right to search him and they could have found the keys on such authorized search.[2] No right of Keating has been invaded by this ruse of Officer McInerney who, incidentally, reported, as he promised Keating that he would, that he had found the keys. It is only unreasonable search that is condemned by the Fourth Amendment to the federal Constitution. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790; United States v. One 1946 Plymouth Sedan Automobile, 7 Cir., 167 F.2d 3. The motion to suppress the evidence was properly overruled.

■ The defendants contend that federal officers had no right to use in a federal prosecution evidence obtained illegally by state officers. Since we hold that the evidence in this case was legally obtained, this contention is without merit. But even if this evidence were illegally obtained by the state officers, it may not be suppressed or excluded in a federal prosecution unless it was obtained in such collaboration with federal officers as to make the unlawful search and seizure an act of both state and federal officers at the same time. Gilbert v. United States, 10 Cir., 163 F.2d 325; Balman v. United States, 8 Cir., 94 F.2d 197. There is not the slightest evidence here of such collaboration.

■ The sufficiency of the indictment is raised here for the first time. The defendants remained silent below. The District Court was given no chance to pass on the question as to the sufficiency of the indictment. We intimate no opinion as to its sufficiency or insufficiency. We hold that its sufficiency cannot be presented here for the first time. Serra v. Mortiga, 204

U.S. 470, 27 S.Ct. 343, 51 L.Ed. 571. We feel free to apply the rule in this case, because on the whole record we are confident no substantial right of the defendant Keating was invaded and every essential element of the crime was proved by evidence admitted in the case without objection.

On the whole record, we find no error as to the defendant Keating, and as to him the judgment of the District Court is affirmed. As to the defendant O'Brien, the judgment is reversed.

[1] People v. Scalisi, 324 Ill. 131, 154 N. E. 715; Marsh et al. v. Smith, 49 Ill. 396.

[2] Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177.