**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank NITTI, Defendant-Appellant.
No. 17593.**

United States Court of Appeals,
Seventh Circuit.

June 4, 1971.

⚷8(3)

Ronald P. Alwin, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Matthias A. Lydon, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, MAJOR, Senior Circuit Judge, and KILEY, Circuit Judge.

MAJOR, Senior Circuit Judge.

Frank Nitti and Robert Anthony Harty, in a one-count indictment, were charged with the possession on June 28, 1966 of twenty-one cases of copper sheet, with knowledge on the part of each that it had been stolen, in violation of Section 659, U.S.C.A. 18. Upon waiver of jury trial defendants were tried by the court and found guilty, and judgment was entered accordingly. From this judgment Nitti (hereafter referred to as defendant) appeals.

Among the issues urged as grounds for reversal is that the evidence was not sufficient to support the charge. Inasmuch as we have concluded that this issue must be decided in favor of defendant, there appears no reason to state or discuss other issues presented.

There is no question but that the property described in the indictment, of which defendant allegedly was in possession, was in the course of interstate commerce at the time it was stolen. Thus, we need do no more than note that the shipment originated at Rome, New York, and was destined for St. Louis, Missouri. The property was being transported in a trailer drawn by a tractor, the driver of which parked it overnight at Greenfield, Indiana, from where it was stolen on June 27, 1966. The

trailer bore the number 9770, and had a Daniels Freight plaque on the side. It was found by FBI agents on June 29, 1966, in a building at 4863 West Ogden Avenue, Cicero, Illinois, at which time it contained the property charged in the indictment to have been stolen.

The government's case is predicated solely on the testimony of Sergeant Wesley Hunter of the Chicago Police Department. Keeping in mind that we must consider his testimony in the light most favorable to the government, we quote the government's version of his testimony as contained in its brief: "Frank Nitti was one of several persons who were attempting to move a tractor and trailer into the rear of a building at 3943 West 5th Avenue, Chicago, Illinois, at approximately 9 p. m. on June 28, 1966; that after these persons were unsuccessful in their attempts, two of the men got into the tractor and proceeded away from the premises with the tractor and trailer; that defendant was one of those two men, specifically the passenger in the tractor, and that the other was Harty, who was the driver; that the trailer fit the description of one which, according to other testimony, had been unlawfully taken from its owner on the previous day and which had been loaded with the copper charged in the indictment as stolen; that the tractor and trailer were driven to 4863 West Ogden Avenue in Cicero, where Nitti assisted in bringing the unit into the building by opening the garage door; and that after a period of about five minutes, during which time defendant and Harty were in the building, they departed from the area together in the same automobile."

We note that the government in some respects overstates the testimony of Hunter. For instance, while Hunter was well acquainted with both defendant and Harty, he did not identify either as being in the group which was attempting to place the tractor and trailer in the building at 3943 West 5th Avenue, nor did he identify either as being the two men who drove the tractor and trailer away. He did testify that shortly thereafter, while the tractor and trailer stopped at the corner of Springfield and Harrison Streets, he looked into the cab and by the aid of artificial lights saw Harty in the driver's seat and defendant in the passenger's seat. He followed the tractor and trailer to the Ogden Avenue address, but he did not testify that defendant "assisted in bringing the unit into the building." He stated, " * * * the man on the passenger's side got out of the truck and went to the door of the building and the door opened. * * * approximately five minutes later the two subjects came out of the garage and got into a car that was parked in front of the building and proceeded east down Ogden."

We think it pertinent to note, also, that on June 29, 1966, Hunter made a report to the FBI of the events which he related in his testimony. Defendant was not arrested until October 4, 1966, more than three months later. No explanation was made at the trial as to the reason for the delay but the government on brief asserts that the FBI was engaged in a further investigation. If such be the case, it is of some significance that no further evidence was developed connecting defendant with the alleged offense.

The government on brief asserts, "Nitti's possession of the stolen property was thus established circumstantially by his active participation in the above described events," and that possession having been thus established, "the trial court could also properly infer the existence of guilty knowledge." With this argument we do not agree.

It would unduly prolong this opinion and perhaps serve no useful purpose to review the many cases called to our attention, as each depends on its own particular facts. Generally, it is held that possession is dependent upon the extent of the defendant's dominion and control over the stolen property.

We briefly analyze a few of the cases, typical of others relied upon by the government on the issue of possession of

stolen property. The first case cited is United States v. Casalinuovo, 350 F.2d 207, 209 (CA–2), from which the government quotes:

"Accordingly, the courts have held the statute to reach 'constructive' possession as well as actual possession, i. e., such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession."

In that case there was placed in the possession of an employee of a store a quantity of merchandise for delivery but which was not delivered. The theft was reported to the FBI, the employee was arrested and made statements. Based thereon, the agents obtained a search warrant to search a building where they encountered the defendant and another person. Basement rooms were locked with a padlock and the defendant was the only person who had a key. He was the janitor, not the owner of the property. When the agents arrived with a search warrant, the defendant refused to unlock basement doors. In the presence of the defendant, the agents forced open a door and found some merchandise but not that which had been stolen. The agents then went to another locked room and again the defendant refused to unlock the door. The agents broke the door open and in the room found a part of the stolen property. It was on this and other circumstances that the court made the pronouncement above quoted and concluded that there was sufficient evidence of dominion and control to support a finding that defendant had constructive and perhaps actual possession of stolen property.

In Sterling v. United States, 333 F.2d 443 (CA–9), Sterling and one Fairbanks were charged among other things with the possession of six cases of whisky, stolen from a vessel moored in the port at Seattle. Fairbanks was the driver of a truck which he backed to a loading platform. As to Sterling, the court stated (page 446):

"A pallet board of Black & White whiskey was in this doorway. Sterling was seen to 'look all around in every direction' and then to start handing cases of whisky down to the platform below the door where Fairbanks picked them up and placed them in the truck. A customs investigator approached from inside the warehouse and asked Sterling (referring to the whisky), 'What's this doing in your truck?' Sterling did not answer."

Fairbanks drove the truck away but soon was arrested with the stolen whisky in the truck, which Sterling had helped load.

In Hale v. United States, 410 F.2d 147 (CA–5), defendant was called to the scene of an automobile accident in which a car driven by his wife was involved. It was later learned that the car had been stolen. One of the issues was whether the defendant had actual or constructive possession of the car. The court pointed out that a person who exercises dominion or control over an object, although not in actual possession of it, is in constructive possession. In holding that the defendant was in constructive possession, the court stated (page 150):

"The appellant's arrival at the scene of the accident was accomplished by implied claims of ownership, a threat of reprisal for the damage caused to *his* property, and an expression of concern about the removal of the wrecked vehicle. This conduct, in conjunction with a subsequent telephone inquiry—by a person who identified himself as 'Don Hale'—as to why the police were holding *his* car, provided the jury with ample evidence to justify a conclusion that the appellant was in constructive possession of the automobile at the scene of the accident."

The government cites the recent decision of this court in United States v. Riso, 405 F.2d 134, on the possession issue. No such issue was involved in that case. Defendant was in possession of the stolen property when arrested, and

one of the defenses was that he did not have knowledge that the property was stolen.

Thus, in *Casalinuovo*, the stolen goods were found pursuant to a search warrant, in a locked room which was accessible only to the defendant; in *Sterling*, the officers saw the defendant loading the stolen property on a truck, and in *Hale*, the defendant in numerous ways had claimed ownership of the stolen property.

The marked distinction between the facts of the cases relied upon by the government and those here hardly calls for discussion. There is not a scintilla of proof that defendant in this case, during the time he was a passenger in the tractor or previously, touched or saw or had any knowledge of the stolen property carried in the trailer. The tractor was operated, managed and controlled solely by Harty, with defendant as a passenger.

■ We think the government's argument on brief exposes the fallacy of its position, "In the case at bar, circumstantially at least, possession as intended by the statute was more clearly shown. The trial judge could easily and logically conclude that the stolen merchandise was on the trailer at the same time the defendant was a passenger in the tractor to which the trailer was attached. And the trailer itself did not belong to either Nitti or his co-defendant. Yet Nitti was a passenger in the tractor hauling the trailer." Obviously, the court could conclude that there was stolen merchandise in the trailer at the time defendant was a passenger; however, it was not warranted in concluding, without proof, that defendant had knowledge that it was stolen. As we have noted, there was no proof that defendant had any knowledge of what, if anything, was hauled in the trailer, much less knowledge that it contained the stolen property described in the indictment, and there is no proof that defendant had any knowledge as to who owned the trailer.

The government continues, "He was twice viewed on the same night attempting to move the trailer into different building locations and away from the outside view. That the defendant was not the driver is of inconsequential significance under circumstances such as these. His exercise of such dominion and control over the copper was indeed possession within the context of Section 659."

■ We have already described the two incidents to which government refers. In the first, defendant was not identified as one of the group aiding Harty in placing the tractor and trailer in the building, although it is inferable that he was. In the second, defendant got out of the tractor and apparently raised the door so that Harty could move the equipment of which he was the operator into the building. It is not discernible to us how either incident constitutes proof that defendant exercised dominion and control over the copper, as the government asserts. Of course, his activities give rise to a suspicion that he knew or should have known of some wrongdoing but such suspicion furnishes no basis for the conclusion that he exercised dominion and control over the stolen property.

■ Of the many cases relied upon by defendant, we need cite only United States v. Wainer, 170 F.2d 603 (CA–7); United States v. O'Brien et al., 174 F.2d 341 (CA–7); United States v. Carengella, 198 F.2d 3 (CA–7), and Pearson et al. v. United States, 192 F.2d 681 (CA–6). These cases, like those relied upon by the government, are distinguishable in one way or another on the factual situations involved. However, also like those relied upon by the government, they stand for the firmly established principle that proof of dominion and control must be made in order to show possession.

In *Pearson*, the Sixth Circuit, like this Circuit in *Wainer* and *O'Brien*, reversed a conviction on the ground that the proof of dominion and control was not

sufficient to show possession. Rather than discuss *Wainer* and *O'Brien,* we quote from *Pearson* (page 692):

"As stated by Justice Minton, when he was a member of the Court of Appeals of the Seventh Circuit: 'To "possess" means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature.' United States v. Wainer, 7 Cir., 170 F.2d 603, 606. And in holding that there was not sufficient evidence to sustain a conviction of one who was accused of having in his truck possession of butter, stolen in interstate commerce, with knowledge that it had been stolen, Justice Minton, in United States v. O'Brien et al., 174 F.2d 341, 345, said: 'He was never seen about the truck exercising any control, dominion, or authority over it, either before or after the stolen butter was found in it. There may be a suspicion that O'Brien and Keating had the same interest in this truck for the occasion and in the stolen butter that was found in the truck, but it is only a suspicion and not enough to send O'Brien to the penitentiary. United States v. Wainer, 7 Cir., 170 F.2d 603. If Keating is guilty, the most that can be said of O'Brien is that he was associating with a guilty man.' "

In *Pearson,* the court affirmed a conviction as to Pearson but reversed as to his co-defendants, Tinsley and Maxwell, on the ground that the proof of dominion and control of the truck owned and operated by Pearson was not sufficient to show possession on their part of the stolen cargo. Both of the co-defendants were employees of Pearson and drove the trucks in which the stolen goods were transported, but the court reasoned that they were acting solely under the direction of Pearson, which was not sufficient to show control and dominion on their part. In doing so the court stated (page 693):

"The record is devoid of any evidence to indicate remotely the slightest degree of ownership of, or control, dominion, or exercise of authority over the liquor cargo in question on the part of Tinsley and Maxwell; and without such evidence, there is nothing upon which to base a finding that Tinsley and Maxwell ever accepted, or were in possession of, the liquor."

It is of dubious pertinency to note that defendant was not charged or tried as an aider and abettor to an offense committed by Harty, nor is the case presented here on that theory. In this connection, the reasoning of this court in United States v. Carengella, supra, is worth repeating (198 F.2d page 7):

"There is not a scintilla of evidence in this record that Di Vito and Blandi knew the whiskey was stolen. While mere possession of recently stolen property warrants the inference of guilty knowledge unless a satisfactory explanation of possession is made consistent with innocence, such an inference cannot apply here. There is no proof in the record that Di Vito and Blandi ever had any actual or constructive possession of the whiskey so that the inference might be effective against them. Surely the aiding and abetting statute does not give rise to the inference of knowledge on the part of Di Vito and Blandi that the whiskey was stolen."

To the same effect see Pearson v. United States, supra, 192 F.2d page 694.

There was a failure of proof that defendant had dominion and control of the stolen property or knowledge as to what property was contained in the trailer, and it follows that there is no basis for the conclusion that he had either actual or constructive possession of it.

The judgment appealed from is reversed and the cause remanded, with directions that the judgment be vacated.