**UNITED STATES of America,**
**Appellee,**

v.

**John CARNEGLIA et al., Appellants.**

**Nos. 23, 74 and 75, Dockets 72–1248,**
**72–1462 and 72–1611.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 12, 1972.

Decided Oct. 30, 1972.

Jesse Berman, New York City, for appellant Inzerillo.

Herbert A. Lyon, Kew Gardens, N. Y. (Lyon & Erlbaum, Kew Gardens, N. Y., on the brief), for appellants Carneglia and DeVito.

L. Kevin Sheridan, Asst. U. S. Atty., (Robert A. Morse, U. S. Atty. E. D. New York, David G. Trager and Thomas P. Puccio, Asst. U. S. Attys., on the brief), for appellee.

Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Following a jury trial in the United States District Court for the Eastern District of New York, Jack B. Weinstein, J., appellants John Carneglia, Salvatore DeVito and Louis Inzerillo were convicted of possessing goods stolen while in interstate commerce, knowing the same to have been stolen, in violation of 18 U.S.C. § 659. Carneglia and DeVito were sentenced to five years imprisonment, Inzerillo to four.[1] Appellants individually and together assert numerous grounds for reversal, but as we find none of their arguments persuasive, we affirm the judgments of conviction.

Because consideration of the claims presented requires extended discussion of the evidence later in this opinion, a brief statement of the background facts will suffice at this point. On June 25, 1971, a tractor-trailer loaded with 414 rolls of doubleknit piece goods was hijacked shortly after its departure from Kennedy Airport en route to Dover, New Jersey. On July 8, 1971, following a tip by a confidential informer, teams of FBI agents and New York City police officers placed two "Hub" rental trucks under surveillance. Both trucks were located in Brooklyn—one was parked in a service station ("the first truck"); the other was a short distance away in a vacant lot adjacent to a residence ("the second truck"). At about 8:30 A.M. on the morning of July 9, a Cadillac, in which appellants and one Anthony Russo[2] were riding, entered the service station. Following some activity by appellants Carneglia and DeVito in and around the first truck, the two returned to the Cadillac and drove away from the service station. The car was observed shortly thereafter by the team maintaining surveillance near the second truck. Here, too, Carneglia and DeVito left the Cadillac and spent several minutes in the vicinity of the second truck. They then reentered the Cadillac, which arrived back at the service station at approximately 9:25. Shortly thereafter, the first truck was observed departing the service station, driven by appellant Inzerillo. FBI agent Joel Moore, assisted by two New York City detectives, stopped the truck several blocks away on Atlantic Avenue, returned it to the service station, and proceeded to search it without a warrant. When the search disclosed piece goods fitting the description of the stolen merchandise (subsequently identified as belonging to the hijacked shipment), all three appellants were placed under arrest. A warrant

1. All three appellants are free on bail pending determination of this appeal.

2. Russo was arrested and indicted as a co-defendant with the three appellants, but was a fugitive at the time of the trial. We are informed that he has since been apprehended and has pleaded guilty to the crime charged.

was obtained to search the second truck, whose contents also matched the description of the stolen doubleknits.

## I

Carneglia and DeVito both argue that there was insufficient evidence from which the jury could fairly conclude beyond a reasonable doubt, see United States v. Taylor, 464 F.2d 240 (2d Cir. 1972), that either of them had possession of the stolen goods and knew the same to be stolen.[3] We conclude that the evidence of possession and of guilty knowledge, although by no means overwhelming, warranted submission of the Government's case to the jury.[4] There was evidence that Carneglia arrived at the service station, immediately left the Cadillac, and walked over to the first truck. He turned and entered the gas station office, where he remained for several seconds; he then met momentarily with DeVito and Inzerillo in the station lot. DeVito climbed into the cab of the truck, where he remained for two or three minutes during which time the hood of the truck moved or rocked noticeably. Carneglia returned to the truck, looked into the cab, and shut the open door on the driver's side. The two then drove together to the second truck. Carneglia, after greeting a woman identified as residing in the adjacent house, got into the cab of the second truck and started it up. Carneglia and DeVito thereafter worked together for five or ten minutes on the tailgate, which was stuck in the down position.

■■ From testimony which, if believed, established the foregoing facts, the jury could reasonably infer that Carneglia and DeVito had attempted to start or had started the trucks, that they attempted to repair the second truck, and that they accordingly contemplated some future personal use of the trucks. We need not decide whether these inferences support the ultimate conclusion that Carneglia and DeVito each had actual possession of the trucks, for the statute also reaches constructive possession, which we have defined as such a "nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." United States v. Casalinuovo, 350 F.2d 207, 209 (2d Cir. 1965). The evidence here established that necessary nexus or relationship, and it showed considerably more than the "bare presence" condemned as insufficient in United States v. Kearse, 444 F.2d 62, 64 (2d Cir. 1971), and in other cases relied upon by appellants.[5] Cf. United States v. Massarotti, 462 F.2d 1328 (2d Cir. 1972).

■ Evidence from which the jury could infer appellants' guilty knowledge

3. *Taylor* overruled the so-called "single test" or "Second Circuit rule" of sufficiency as enunciated by Judge Learned Hand in United States v. Feinberg, 140 F.2d 592, 594 (2d Cir.), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944), and propounded a stricter rule of sufficiency in criminal cases. Although the court below felt constrained to apply the old *Feinberg* rule, we conclude that appellants' motions for acquittal were properly denied under either test.

4. Carneglia and DeVito both moved for acquittal at the close of the Government's case-in-chief pursuant to Fed.R.Crim.P. 29(a). Both rested thereafter and only appellant Inzerillo presented witnesses in his defense. The Government thus concedes that Carneglia and DeVito are entitled to have their argument with respect to sufficiency judged solely in light of evidence initially presented by the Government. See United States v. Calderon, 348 U.S. 160, 164, n. 1, 75 S.Ct. 186, 99 L.Ed. 202 (1954); United States v. Rosengarten, 357 F.2d 263, 266 (2d Cir. 1966).

5. United States v. Nitti, 444 F.2d 1056 (7th Cir. 1971) (defendant only temporarily a passenger in trailer containing contraband; no evidence of control); Pearson v. United States, 192 F.2d 681 (6th Cir. 1951) (defendants only acting under direction of truck owner; no evidence of their ownership or control); United States v. O'Brien, 174 F.2d 341 (7th Cir. 1949) (defendant only passenger and in truck prior to discovery of stolen goods; while stolen goods were on truck, observation of defendant in vicinity in company of driver insufficient to establish control).

of the contraband character of the goods was also sufficient. We note our cases which hold that once possession is established, the "[p]ossession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession, and, though only prima facie evidence of guilt, may be of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." United States v. Minieri, 303 F.2d 550, 554 (2d Cir.), cert. denied, 371 U.S. 847, 83 S.Ct. 79, 9 L.Ed.2d 9 (1962); United States v. Fried, 464 F.2d 983, 985 (2d Cir. 1972).[6] It is argued to us, as it was to the jury, that appellants were only innocently helping their friend Inzerillo with two balky trucks. Perhaps the jury might reasonably have accepted that view, but surely it was not required to. Whatever may be said with regard to the activity of Carneglia and DeVito at the first truck, their subsequent and purposeful visit, without Inzerillo,[7] to the second truck parked some blocks away strongly supported an inference that Carneglia and DeVito had prior familiarity with the trucks and their respective locations, and equally that they were familiar with the character of the contents. Moreover, Carneglia was observed, upon his return to the service station, to be turning his head rapidly from side to side; the jury might reasonably conclude not only that he was concerned about possible police surveillance or interference from innocent passers-by, but also that the reason for any understandable concern was his own knowledge that he was illegally trafficking in stolen merchandise.

## II

Appellant Inzerillo attacks the validity of the search of the first truck on two grounds. He first objects to the district judge's refusal to require the United States to disclose the identity of its confidential informer. At the suppression hearing, FBI agent Good recounted information received from an informer who had previously provided tips leading to at least four arrests and convictions. From his personal knowledge, the informer described the contents of the hijacked shipment and stated that he had observed this merchandise on two "Hub" rental trucks. He specified street addresses at which the trucks were located and provided the numbers of the rental trucks. Inzerillo argues that refusal to disclose the informer's identity prevented any effective opportunity to test the existence of probable cause through cross-examination.

 In United States v. Comissiong, 429 F.2d 834 (2d Cir. 1970), Judge Friendly carefully analyzed circumstances under which disclosure of informer identity is required and thoroughly reviewed the cases, beginning with Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In *Comissiong*, we sanctioned non-disclosure where "[t]he independent evidence, even though not adequate of itself to establish probable cause, constitutes a sufficient voucher against fabrication, although obviously not a complete one." 429 F.2d at 839. Here the agents testified that Carneglia and DeVito were known by them to be hijackers. Prior to any search, the agents had observed Carneglia and DeVito in possession of two rental trucks parked at different locations, with Carneglia showing considerable concern about possible surveillance. When apprehended in the first truck, appellant Inzerillo, to all appearances associated with Carneglia and DeVito, was unable adequately to ex-

---

6. United States v. Casalinuovo, 350 F.2d 207, 211 (2d Cir. 1965), implies that the inference may be weaker in a case of constructive, as opposed to actual, possession, but that decision does not absolutely bar resort to the inference here. In any event, we see no reason for distinguishing between the validity of the inference in the two situations.

7. At oral argument, counsel for Carneglia and DeVito strenuously urged that no testimony conclusively established that Inzerillo ever stayed behind at the service station. But although evidence was conflicting to some degree, testimony by two FBI agents at trial warrants a finding that he did.

plain how he came to drive the truck; nor could he provide rental documents for the truck under his control or any bill of lading for its contents. While these observations might not alone have constituted probable cause to search, they surely tended to establish facts and circumstances which would reasonably have warranted "the officers conducting the search . . . to believe that they will find the instrumentality of a crime or evidence pertaining to a crime before they begin their warrantless search." Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221, 88 S.Ct. 1472, 1475, 20 L.Ed.2d 538 (1968). Beyond independent evidence tending to establish probable cause, on-the-scene corroboration of key elements of an informer's tip serves as an additional safeguard against fabrication. "The idea of 'corroboration' would seem in the end to be one key to sound resolution of motions to suppress." United States v. Tucker, 248 F.Supp. 911, 915 (S.D.N.Y. 1965), aff'd, 380 F.2d 206, 211 (2d Cir. 1967); see United States v. Colon, 419 F.2d 120, 121 (2d Cir. 1969) (per curiam). Prior to the search of the first truck, the agents were able to corroborate certain critical details of the informer's story, including the identity of the trucks and their locations. Judge Weinstein thus did not err in refusing to require disclosure of the informer's identity or in refusing to examine the informer *in camera.*

■ Inzerillo further argues that, even with probable cause, the warrantless search of the first truck after it had been removed from the highway and returned to the service station was improper and that the fruits of the search should have been suppressed. Inzerillo claims that under Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), there has to be a "constitutionally significant" reason for not obtaining a warrant, and there was none here. The Court in *Coolidge* phrased the inquiry somewhat differently. At 403 U.S. 463 n. 20, 91 S.Ct. 2022, it emphasized that in considering the

warrantless search of a vehicle stopped initially on the highway and subsequently searched in a different location, the basic question is whether the "initial intrusion" by agents of the Government, here the seizure, was justified by "exigent circumstances" applicable to moving vehicles.

Turning then to the justification for the initial seizure of the truck without warrant, a distinction is invariably made between seizures and searches

> of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained and [those] . . . of a ship, motor boat, wagon, or automobile . . ., where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Although the *Carroll* Court did note that "where the securing of a warrant is reasonably practicable, it must be used", id. at 156, 45 S.Ct. at 286, decisions which followed have generally found indicia of impracticability and have upheld warrantless searches or seizures on probable cause where vehicles in motion or about to move are stopped on the road to permit searches for contraband. See, e. g., Husty v. United States, 282 U.S. 694 (1931); Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949); cf. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969). When Agent Moore and two city detectives stopped the first truck, with Inzerillo at the wheel, on Atlantic Avenue in Brooklyn, the warrantless seizure was justified, as a warrantless search would then have been justified had the officers chosen to execute one. Although Inzerillo was thereafter detained and in custody, the officers may not have known whether his confederates were still at large and able to remove the truck or whether they had already been apprehended by other agents

back at the service station. Indeed, for aught that appeared, the arresting agents had no way to know whether Inzerillo's confederates included others beyond Carneglia, DeVito and Russo and not yet under suspicion. Though one of the three or some other agent might have been dispatched to obtain a warrant from a conveniently available magistrate, the absence of even one officer might have jeopardized the prompt apprehension of the four suspects. Whether any or all of these eventualities were probable, the tenor of the Supreme Court's decisions suggests that law enforcement officers should not ordinarily be required to weigh ambiguous probabilities or make such difficult judgments in the fleeting course of seizing contraband from moving vehicles.

Given justification for the initial warrantless seizure of a vehicle, Coolidge v. New Hampshire, *supra,* on which appellant mistakenly relies, reiterates the teaching of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969), that a later warrantless search will almost always be valid. 403 U.S. at 463 n. 20, 91 S.Ct. 2022. See also United States v. Ellis, 461 F.2d 962, 965–967 (2d Cir. 1972). A plurality in *Coolidge* invalidated a subsequent search of a vehicle without a validly issued warrant, but it did so for the reason that the initial seizure of the car in petitioner's driveway, several weeks after he had come under suspicion and while he was under arrest, was unjustified by any "exigent circumstances." In *Chambers,* the Court upheld the warrantless search of a car, lawfully seized on the road, which occurred "many hours"[8] later at the police station with all suspects in custody. This case is somewhat stronger than *Chambers,* since the search here was made only a few minutes after seizure of the first truck and its removal to the nearby gas station. Indeed, the *Chambers* majority considered, but finally rejected, a less-restrictive-alternative analysis which would permit only the initial seizure and which would preclude, until a warrant is obtained, the subsequent search as a greater intrusion more offensive to privacy interests safeguarded by the fourth amendment. Compare 399 U.S. at 51–52, 90 S.Ct. at 1981–1982 with id. at 63–65, 90 S.Ct. at 1987–1988 (Harlan, J., concurring and dissenting). In sum, as we read *Coolidge* and *Chambers,* the warrantless search of the first truck in this case was clearly lawful.

### III

■■ Inzerillo next attacks the admission into evidence of certain statements which he made to law enforcement officers immediately following his apprehension in the first truck. Before he made any statement, Inzerillo was advised by Agent Moore that:

> [H]e had the right to remain silent, and that anything he said could be used against him in a court of law; he had the right to speak to an attorney before being questioned; if he could not afford an attorney, why one would be appointed for him if and when he went to court.

Agent Moore further testified that he customarily advised suspects in police custody that their rights included presence of counsel during any questioning and that he probably so informed Inzerillo.

Having been thus advised of his rights, Inzerillo made certain exculpatory statements: He described how an individual unknown to him had the day before offered him $50 to drive the truck, and how earlier that morning he had arrived at the service station by bus. Inzerillo argues that because these statements were improperly admitted, he was forced to retell essentially the same tale in his own defense at trial and consequently subjected his credibility to dis-

---

8. The time lapse is taken from the Supreme Court's discussion of the facts of *Chambers* in Coolidge v. New Hampshire, supra, 403 U.S. at 463, n. 20, 91 S.Ct. at 2022.

astrous impeachment by the Government.

Inzerillo urges that the warnings as administered diverged from those prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1622, 16 L.Ed.2d 694 (1966), in one significant respect: He was not clearly advised that he had the right, if indigent, to appointed counsel not only in court but at any on-the-street interrogation as well. Although we have said that "the words of *Miranda* do not constitute a ritualistic formula which must be repeated without variation in order to be effective [; w]ords which convey the substance of the warning along with the required information are sufficient," United States v. Vanterpool, 394 F.2d 697, 698–699 (2d Cir. 1968), we have also, it is true, disapproved admission of statements absent any warning that interrogation counsel would be appointed for indigent defendants. United States v. Fox, 403 F.2d 97, 100 (2d Cir. 1968); cf. United States v. Chaplin, 435 F.2d 320, 322 (2d Cir. 1970). We viewed the warnings in *Fox* as inadequate for other additional reasons, however, and in both *Fox* and *Chaplin* no mention was made whatever of court-appointed attorneys supplied at any point in the criminal process; here the agent specifically adverted to appointment of counsel if and when Inzerillo went to court. See United States v. Vanterpool, *supra*; United States v. Anderson, 394 F.2d 743 (2d Cir. 1968).[9]

Indeed, this case seems close on its facts to United States v. Lamia, 429 F.2d 373, 374–375 (2d Cir.), cert. denied, 400 U.S. 907, 91 S.Ct. 150, 27 L.Ed.2d 146 (1970), where the accused was informed that

> he had a right to an attorney, [that] if he wasn't able to afford an attorney, an attorney would be appointed by the court.

We held in *Lamia* that failure to apprise the defendant specifically of his right to have counsel present during questioning did not require reversal; and Lamia's knowledge of his right, if indigent, to appointed counsel during interrogation was surely far more problematic than Inzerillo's, for there the right to presence of counsel at questioning was itself nowhere expressly mentioned. It is arguable that a clear warning of the right to appointed counsel "if and when he went to court" is more misleading than an altogether ambiguous mention of court-appointed counsel, since by implication the former can be taken to exclude the right to have appointed counsel present during interrogation. The argument is not very persuasive, however, on the facts of this case. When arrested back at the service station and confronted with the recovered contraband, only one-half hour after making the statements here at issue, Inzerillo informed the agent that he wished to consult with counsel before responding to any further questions. While the *Miranda* opinion indicated that "[a]ssessments of the knowledge the defendant possessed, based on information as to his age . . . or prior contact with authorities can never be more than speculation," 384 U.S. at 468–469, 86 S.Ct. 1602, 1625, and that courts should not "inquire in individual cases whether the defendant was aware of his rights without a warning being given," id. at 468, 86 S.Ct. 1602, 1625, we do not think that evidence of subsequent conduct here is irrelevant to show what Inzerillo understood from warnings which concededly were administered. Inzerillo, who apparently was not indigent at the time of trial,[10] manifestly understood his rights to remain silent and to have counsel, whether appointed or retained, present during interrogation.

---

9. In United States v. Fox, supra, we expressly distinguished *Vanterpool* and *Anderson* on the ground, inter alia, that at least some mention, however ambiguous, was made of the right to court-appointed counsel. 403 F.2d at 100 n. 1.

10. Inzerillo's counsel at trial was retained. His counsel on appeal, however, was appointed by this court.

Appellants raise three further contentions. Carneglia and DeVito urge that the district court's refusal to sever their cases from Inzerillo's constituted error. Inzerillo argues both that the search warrant for the second truck was issued without an adequate showing of probable cause and that the court below improperly permitted the Government to impeach two of its own witnesses called in rebuttal. We have considered these claims but find them so lacking in merit as to warrant no further discussion.

Judgments affirmed.